927 So.2d 209 (2006)
Daniel Eugene BUCHANAN, Appellant,
v.
STATE of Florida, Appellee.
No. 5D05-1797.
District Court of Appeal of Florida, Fifth District.
April 28, 2006.
*210 William J. Sheppard and D. Gray Thomas of Sheppard, White, Thomas Kachergus, P.A., Jacksonville, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Rebecca Rock McGuigan, *211 Assistant Attorney General, Daytona Beach, for Appellee.
PALMER, J.
Daniel Buchanan (defendant) appeals his judgment and sentence which were entered by the trial court after a jury found him guilty of committing the crime of aggravated battery with a firearm. Concluding that the trial court erred in restricting the defendant to six peremptory challenges during jury selection, we reverse.
The defendant was charged with committing the offense of aggravated battery with a firearm in violation of section 784.045 of the Florida Statutes. The information was later amended to specifically allege that, as a result of the defendant's discharge of a firearm, great bodily harm was inflicted upon the victim, thus enabling the State to apply Florida's 10-20-Life sentencing enhancement statute, as set forth in section 775.087 of the Florida Statutes.
The evidence at trial demonstrated that the defendant is a bail bondsman and the victim, Kevin Brinson, was one of the defendant's clients who had jumped bail. The evidence revealed that as Buchanan was attempting to apprehend Brinson, Brinson attempted to exit a car by climbing over the driver's seat, at which time Buchanan shot Brinson in the buttocks, severely injuring him.
The jury found the defendant guilty as charged. The trial court thereafter entered judgment in accordance with the jury's verdict and sentenced the defendant to a mandatory minimum term of 25 years' imprisonment pursuant to Florida's 10-20-Life statute.
In challenging his conviction, the defendant first argues that the trial court erred in denying his pre-trial motion to dismiss. He argued below that dismissal was warranted because, as a matter of law, he was privileged to shoot Brinson since, as a bail bondsman, he possessed a common law privilege to "use whatever means necessary to affect the surrender" of Brinson. He further argued that, in addition to the common law privilege, the Florida Statutes authorized him to use any force which he deemed reasonable to apprehend Brinson, citing to section 776.07 of the Florida Statutes (2005) to support this claim. The statute reads, in pertinent part:
776.07. Use of force to prevent escape
(1) A law enforcement officer or other person who has an arrested person in his or her custody is justified in the use of any force which he or she reasonably believes to be necessary to prevent the escape of the arrested person from custody.
§ 776.07(1), Fla. Stat. (2005). The trial court properly rejected both arguments as meritless.
First, as the trial court aptly noted, there is no case law in Florida which supports the defendant's contention that, as a matter of law, bail bondsmen possess a common law privilege to use whatever force necessary, including deadly force, to effect the surrender of a person who has jumped bail. In Register v. Barton, 75 So.2d 187 (Fla.1954), our Supreme Court generally recognized the principle that a person "under bail is in the vicarious custody of his bondsman whose `dominion is a continuance of the original imprisonment,' and the principal may be apprehended by his bondsman even under extreme circumstances." However, the Register court did not speak to the issue of what level of force a bail bondsman is entitled to use in an effort to capture a fugitive.
Having found no Florida case law which supports the defendant's claim of unfettered privilege to use deadly force when *212 seeking to capture a fugitive, we conclude the trial court properly ruled that dismissal of the instant information was not warranted on said basis. See generally Bennett v. State, 169 Ga.App. 85, 311 S.E.2d 513 (1983)(holding that bail bondsman may not shoot accused to prevent his escape by flight, but he may, to overcome declared, open, and armed resistance to execution of warrant, use such force as may be reasonably necessary to effect the arrest). See also Commonwealth v. Cabral, 443 Mass. 171, 819 N.E.2d 951 (2005)(explaining that surety's authority is to use only that force that an ordinary, prudent, and intelligent person with the surety's knowledge would have believed necessary in the circumstances to capture and surrender the principal); State v. Haskins, 160 N.C.App. 349, 585 S.E.2d 766 (2003)(explaining that a surety can use reasonable force in apprehending a fugitive).
Next, as for the defendant's claim that application of the provisions of section 776.07(1) of the Florida Statutes warranted the pre-trial dismissal of the instant information, the trial court properly rejected this claim as well. During the hearing on the defendant's dismissal motion, the State advised the trial court that it was prepared to present evidence indicating that the shooting of Brinson by the defendant was in retaliation for Brinson's repeated refusal to surrender. Based on this information, the court properly recognized that dismissal was not warranted because a jury question existed.
In a related claim, the defendant argues that the trial court erred in denying his request for a special jury instruction regarding his justification defense, asserting that his requested instruction should have been given because it contained a proper statement of the law and was supported by the evidence. We disagree.
A trial court has wide discretion in instructing the jury, and the court's decision regarding the charge to the jury is reviewed with a presumption of correctness on appeal. Carpenter v. State, 785 So.2d 1182 (Fla.2001). In order to be entitled to receive a special jury instruction, the defendant must prove:
(1) the special instruction was supported by the evidence; (2) the standard instruction did not adequately cover the theory of defense; and (3) the special instruction was a correct statement of the law and not misleading or confusing.
Stephens v. State, 787 So.2d 747, 756 (Fla.2001)(footnotes omitted).
Here, the defendant requested that the trial court issue the following special instruction to the jury:
A duly licensed bail bondsman need not retreat from or stop efforts to make surrender of a bailee because of resistance or threatened resistance to the surrender or detention. The bail bondsman is justified in the use of any force that he reasonably believes necessary [to] defend himself or another from bodily harm while making surrender. That force is justifiable when necessary in surrendering a bailee on his bond.
This language closely tracks the language set forth in section 776.05 of the Florida Statutes. That statute reads:
776.05. Law enforcement officers; use of force in making an arrest
A law enforcement officer, or any person whom the officer has summoned or directed to assist him or her, need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. The officer is justified in the use of any force:
(1) Which he or she reasonably believes to be necessary to defend himself or *213 herself or another from bodily harm while making the arrest;
(2) When necessarily committed in retaking felons who have escaped.
§ 776.05, Fla. Stat. (2005).
However, section 776.05 did not apply to the facts presented in this case since the defendant was neither a law enforcement officer nor a person whom the officer had summoned or directed to provide assistance. Accordingly, the trial court did not abuse its discretion in refusing to instruct the jury based upon this inapplicable statute.
The defendant next argues that the trial court erred in restricting him to only six peremptory challenges during jury selection when he was legally entitled to receive ten peremptory challenges. We agree.
As noted above, the defendant was charged with committing the offense of aggravated battery with a firearm, in violation of section 784.045 of the Florida Statutes. Section 784.045 defines the offense as being a second degree felony.
Pursuant to rule 3.350 of the Florida Rules of Criminal Procedure, defendants who are charged with committing second degree felonies are generally entitled to receive only six peremptory challenges during jury selection, while ten peremptory challenges are afforded to defendants facing charges punishable by death or imprisonment for life:
Rule 3.350. Peremptory Challenges
(a) Number. Each party shall be allowed the following number of peremptory challenges:
(1) Felonies Punishable by Death or Imprisonment for Life. Ten, if the offense charged is punishable by death or imprisonment for life.
(2) All Other Felonies. Six, if the offense charged is a felony not punishable by death or imprisonment for life.
(3) Misdemeanors. Three, if the offense charged is a misdemeanor.
Fla. R.Crim. P. 3.350. Section 913.08 of the Florida Statutes (2005) is in accord:
913.08. Number of peremptory challenges
(1) The state and the defendant shall each be allowed the following number of peremptory challenges:
(a) Ten, if the offense charged is punishable by death or imprisonment for life;
(b) Six, if the offense charged is punishable by imprisonment for more than 12 months but is not punishable by death or imprisonment for life;
(c) Three, for all other offenses....
§ 913.08(1), Fla. Stat. (2005).
In this case, confusion arose concerning the proper number of peremptory challenges available to the defendant because the information which was filed against the defendant alleged additional facts that enabled the State to seek application of the sentencing enhancement provisions of Florida's "10-20-Life" statute. Specifically, the information averred that the defendant discharged a firearm and, as a result of said discharge, great bodily harm was inflicted upon the victim. The enhancement statute reads:
775.087. Possession or use of weapon; aggravated battery; felony reclassification; minimum sentence
* * *
(2) (a) 1. Any person who is convicted of a felony or an attempt to commit a felony, regardless of whether the use of a weapon is an element of the felony, and the conviction was for:
* * *

*214 g. Aggravated battery;
* * *
3. Any person who is convicted of a felony or an attempt to commit a felony listed in sub-subparagraphs (a)1.a.-q., regardless of whether the use of a weapon is an element of the felony, and during the course of the commission of the felony such person discharged a "firearm" or "destructive device" as defined in s. 790.001 and, as the result of the discharge, death or great bodily harm was inflicted upon any person, the convicted person shall be sentenced to a minimum term of imprisonment of not less than 25 years and not more than a term of imprisonment of life in prison.
§ 775.087(2)(a), Fla. Stat. (2005)(emphasis added).
By placing language in the information which implicated the applicability of Florida's "10-20-Life" statute, the State placed the issue concerning the length of the defendant's potential sentence before the jury to decide because it was for the jury to determine whether or not the defendant caused great bodily harm to the victim. If so, then the defendant would face the prospect of being sentenced to a term of life imprisonment.
The defendant raised this argument to the trial court prior to jury selection by specifically requesting that the trial court grant him ten peremptory challenges. The State objected, arguing that only six peremptory challenges were warranted because the underlying crime, aggravated battery, was a second degree felony not punishable by life imprisonment. The State also argued that the defendant was only entitled to receive six peremptory challenges because it would not be seeking a sentence of life imprisonment.
Upon consideration, the trial court ruled:
Well, a 25-year minimum is not life, therefore I would say he's not entitled to the ten, and is entitled to only six. So the State is not seeking life in prison and I can tell you that I wouldn't give him life in prison, therefore life  so based on that I am going to find that he is entitled to only six peremptories rather than ten.
The court also cited to Smellie v. State, 720 So.2d 1131 (Fla. 4th DCA 1998) to support its ruling. In Smellie, the Fourth District held that State's pre-trial filing of its notice of intent to seek habitual offender sentencing did not entitle the defendant to receive ten peremptory challenges. We must determine whether the trial court's reliance on Smellie v. State, 720 So.2d 1131 (Fla. 4th DCA 1998), was proper.[1]
In Smellie, the defendant argued that he was entitled to receive ten peremptory challenges because at the time of jury selection the State had already filed notice of its intent to have him declared an habitual felony offender, thereby making the offense with which he was charged punishable by life imprisonment. The Fourth District disagreed:
We agree with Inmon v. State, 383 So.2d 1103 (Fla. 2d DCA), review denied, 389 So.2d 1111 (Fla.1980), which held that the State's filing of its notice of *215 intent to seek an habitual offender sentence enhancement prior to trial does not serve to increase the number of peremptory challenges a defendant would otherwise be permitted based on the "offense charged." Appellant's interpretation of the statute would lead to the incongruous result of allowing a defendant whose notice to habitualize was filed prior to jury selection ten peremptory challenges, while a defendant facing the same permissible life sentence whose notice is filed at a later stage of the proceeding would only have six. We interpret section 913.08(1)(a)'s reference to the punishment for the "offense charged" to pertain to the statutory maximum for the charged offense without habitual offender enhancement.
Id. at 1132.
We conclude that the ruling in Smellie is not controlling here because the facts in the two cases differ. In Smellie, the defendant faced the prospect of receiving a life sentence based solely upon the trial court's determination of whether he qualified for habitual offender sentencing. In contrast, here the defendant faced the prospect of receiving a life sentence based solely upon the jury's factual determination of whether the defendant inflicted serious injury on the victim. Stated differently, the jury in Smellie possessed no ability to impact the determination as to whether a life sentence would be imposed on the defendant, whereas in the instant case the jury was solely responsible for determining whether the defendant would be facing the prospect of receiving a term of life imprisonment. As such, the defendant was statutorily entitled to receive ten peremptory challenges because he was charged with committing a felony which was punishable by life imprisonment.
As for the trial court's reasoning that the defendant was not entitled to receive ten peremptory challenges because the court did not intend to impose a life sentence, the defendant is correct in arguing that no statutory or case law exists which supports this reasoning. The statute and rule are clear: A defendant who is charged with a felony which is punishable by imprisonment for life is entitled to receive ten peremptory challenges.
The last issue with regard to the peremptory challenges is whether, as the State maintains, the error is harmless because the trial court kept its word and did not impose a life sentence. No legal support exists for such a construction of the statute or rule, and basic notions of due process support strict enforcement of the statutorily-mandated rules regarding the number of challenges which are available in the various types of prosecutions.
The trial court's denial of defendant's request for ten peremptory challenges was reversible error. Accordingly, the defendant's judgment and sentence are vacated, and this case is remanded for a new trial.
Defendant's additional arguments on appeal are without merit.
REVERSED and REMANDED.
ORFINGER and MONACO, JJ., concur.
NOTES
[1] The defendant properly preserved this issue for appellate review because he placed the issue squarely before the trial court for resolution prior to the start of the jury selection process. Compare Dante v. State, 903 So.2d 293 (Fla. 3d DCA 2005)(holding that defendant failed to preserve for appellate review his claim that the trial court erred by only allowing him only three peremptory challenges when he was entitled to six when he did not assert that he was entitled to receive six challenges, and he accepted the jury without objection).