148 P.3d 993 (2006)
STATE of Washington, Petitioner,
v.
Matthew Arthur W. WILLIAMS, Respondent.
No. 76625-8.
Supreme Court of Washington, En Banc.
Argued October 27, 2005.
Decided November 30, 2006.
*994 Thomas E. Weaver Jr., Attorney at Law, Bremerton, WA, for Petitioner.
Randall Avery Sutton, Kitsap Co. Prosecutor's Office, Port Orchard, WA, for Respondent.
MADSEN, J.
¶ 1 Matthew Williams challenges his conviction for possession of an unlawful firearm pursuant to RCW 9.41.190. Williams claims that instruction 11, the "to convict" instruction, was a misstatement of the law because it failed to inform the jury that in order to convict him it must find he knew the characteristics of the firearm that made it unlawful under RCW 9.41.190. We hold the State must prove that a defendant knows, or should know, the characteristics of the firearm that make it unlawful.
¶ 2 Nevertheless, we conclude that the defect in instruction 11 was harmless. There is no dispute that Williams' knowledge of the law prohibiting him from possessing the shotgun at issue is irrelevant to the question of guilt. He is presumed to know the law. Because the barrel of the shotgun that Williams possessed was shortened to only 13 inches, 5 inches shorter than the law permits, the evidence of his guilt is overwhelming. Although Williams arguably presented a sympathetic explanation for possessing the gun, such considerations were for the prosecuting attorney in deciding initially whether to charge Mr. Williams with possession of an unlawful firearm. We affirm.

FACTS
¶ 3 In April 2003, Mr. Williams was helping his grandmother move out of her house and into another residence. While he was cleaning out his grandmother's garage he came across his deceased grandfather's shotgun. Mr. Williams took the shotgun and placed it in the bathroom that was inside the back bedroom  the bedroom that had been his grandmother's  because there was a lock on that door and the garage did not have a lock. He then locked the door to the bedroom to prevent others from stumbling upon the gun and hurting themselves.
¶ 4 The following week, Mr. Williams was leaving his grandmother's house to run some errands when Deputy Sheriff Mark Malloque approached him and inquired about a certain juvenile suspect for whom Malloque was looking. Mr. Williams said that the juvenile was not at his grandmother's house. At Deputy Malloque's request Mr. Williams allowed him to search the house for the juvenile. He unlocked the bedroom door to allow Deputy Malloque to look for the juvenile. Inside the bathroom Malloque saw the shotgun sitting on top of the toilet tank and noticed that the barrel was shorter than allowed by law. When asked about the weapon Williams initially denied knowing anything about the gun. Upon further inquiry, he said the gun came from the garage. Deputy Malloque arrested Mr. Williams. Williams said he did not understand why he was being arrested until Deputy Malloque informed him that the gun was too short. The barrel on the shotgun measured 13 1/8 inches with an overall length of 24 3/8 inches. Report of Proceedings (RP) (jury trial, July 29, 2003) at 105. The State charged Mr. Williams with one count of possession of an unlawful firearm pursuant to RCW 9.41.190(1).
¶ 5 At trial, the court advised the jury in instruction 11 that to convict the defendant it must find beyond a reasonable doubt, "(1) [t]hat on or about April 23, 2003 [Williams] did knowingly have in his possession or under his control a short-barreled shotgun and (2)[t]hat the acts occurred in the State of Washington." Clerk's Papers (CP) at 56. The State proposed that the jury be instructed that "[i]t is not a defense to a criminal charge that the Defendant believe [sic] his or her conduct was lawful. Ignorance of the law is no excuse for criminal conduct." RP at 132. The State argued that the purpose of *995 the instruction was to preclude defense counsel from arguing that the defendant did not know this particular weapon was illegal. The trial court declined to give the proposed instruction.
¶ 6 In closing argument defense counsel argued that under instruction 11 Williams had to know that the shotgun was a short-barreled shotgun but did not have to know it was illegal. In contrast, the State argued that Williams did not have to know the weapon was a short-barreled shotgun in order for the jury to convict him.
¶ 7 The jury found Mr. Williams guilty, and the court sentenced him to 45 days in jail (with possibility of jail alternatives). Williams appealed his conviction, arguing that the State needed to prove that he knew the facts that made the firearm illegal. The Court of Appeals disagreed, holding that the State need only prove that a defendant knowingly possessed the unlawful firearm. State v. Williams, 125 Wash.App. 335, 340-41, ¶ 15, 103 P.3d 1289 (2005).

ANALYSIS
¶ 8 Mr. Williams argues that an essential element of possession of an unlawful firearm is knowledge that the firearm in question has the characteristics of an unlawful firearm. He claims that the "to convict" instruction given in this case erroneously omitted this knowledge requirement. Accordingly, he contends, his conviction must be reversed and a new trial ordered under proper instructions. The State argues that it need only prove that a defendant knowingly possessed the firearm.[1]
¶ 9 RCW 9.41.190 provides that "[i]t is unlawful for any person to manufacture, own, buy, sell, loan, furnish, transport, or have in possession or under control, any machine gun, short-barreled shotgun, or short-barreled rifle." Because the statute contains no express knowledge element we must decide whether the legislature intended to hold those who possess these weapons strictly liable.
¶ 10 Statutory interpretation is a question of law that this court reviews de novo. Am. Cont'l Ins. Co. v. Steen, 151 Wash.2d 512, 518, 91 P.3d 864 (2004). The primary goal of statutory interpretation is to ascertain and give effect to the legislature's intent and purpose. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 9, 43 P.3d 4 (2002). This is done by considering the statute as a whole, giving effect to all that the legislature has said, and using related statutes to help identify the legislative intent embodied in the provision in question. Id. at 9-10, 43 P.3d 4.
¶ 11 While this court has not decided whether knowledge is an element of RCW 9.41.190, we have determined that knowledge is an element of RCW 9.41.040(2)(a), second degree unlawful possession of a firearm. State v. Anderson, 141 Wash.2d 357, 5 P.3d 1247 (2000). RCW 9.41.040 prohibits convicted felons from possessing firearms. In Anderson, this court relied on the test from Staples v. United States, 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), adopted by this court in State v. Bash, 130 Wash.2d 594, 925 P.2d 978 (1996), in finding that the legislature did not intend second degree unlawful possession of a firearm to be a strict liability crime. In Staples, the defendant argued that the government was required to prove that he knew the features of his firearm that brought the weapon within the requirements of the National Firearms Act, 26 U.S.C. §§ 5801-5872, which criminalized possession of an unregistered machine gun. Because the act did not contain a knowledge element, the Court considered several factors to decide whether Congress intended to create strict liability. These factors include: (1) the background rules of the common law and its conventional mens rea requirement, (2) whether the crime can be characterized as a public welfare offense, (3) the extent to which *996 a strict liability reading of the statute would encompass innocent conduct, (4) the harshness of the penalty, (5) the seriousness of the harm to the public, (6) the ease or difficulty of the defendant ascertaining the true facts, (7) relieving the prosecution of time-consuming and difficult proof of fault, and (8) the number of prosecutions expected. Staples, 511 U.S. at 615-19, 114 S.Ct. 1793. The considerations identified in Staples must be applied "in light of the principle that offenses with no mental element are generally disfavored." Anderson, 141 Wash.2d at 363, 5 P.3d 1247.
¶ 12 In Anderson, application of the Staples' factors led to the conclusion that the legislature did not intend to eliminate mens rea from RCW 9.41.040. Id. Accordingly, we held that the State must prove knowing possession to sustain a conviction.
¶ 13 The gun possession offenses created in RCW 9.41.040 and .190 implicate various levels of knowledge. State v. Warfield, 119 Wash.App. 871, 878, 80 P.3d 625 (2003). Under RCW 9.41.190, at issue here, there are three possible points at which knowledge might be relevant: knowledge of the possession itself, knowledge that possessing a short-barreled shotgun, short-barreled rifle, or machine gun is illegal, and knowledge of the weapon's characteristics that makes possession of the weapon unlawful.
¶ 14 With regard to knowledge of possession, in State v. O'Neal, 126 Wash.App. 395, 414-15, 109 P.3d 429 (2005), the court dismissed the defendant's conviction for possession of a machine gun without prejudice because the charging document failed to include knowledge of the possession as an element of the crime. Similarly, in Warfield, 119 Wash.App. 871, 878, 80 P.3d 625, the court held that knowing possession is an element of the crime of possession of an unlawful firearm under RCW 9.41.190. The decisions in O'Neal and Warfield were based, in part, on this court's decision in Anderson. We agree that our reasoning in Anderson compels the result reached by the Court of Appeals in those cases.
¶ 15 Here, the trial court instructed the jury in instruction 11 that to convict Williams of the crime of unlawfully possessing a short-barreled shotgun it must find that "[Williams] did knowingly have in his possession or under his control a short-barreled shotgun." CP at 56. The trial court's instruction was proper and in accord with O'Neal and Warfield.[2]
¶ 16 The only remaining question here is whether the legislature intended to make persons strictly liable for possessing certain types of weapons, regardless of whether the person knows the characteristics of the weapon that make its possession illegal. As in Anderson, we are guided by the factors adopted from Staples. The first factor does not further our analysis because there is no common law predecessor to RCW 9.41.190. However, the second factor, whether the crime is a public welfare offense, does shed some light on the inquiry. As noted, the eight-factor test has previously been applied by this court in construing RCW 9.41.040. See Anderson, 141 Wash.2d 357, 5 P.3d 1247. Notably, the legislature amended RCW 9.41.040 at the same time as RCW 9.41.190. Laws of 1994, 1st Spec. Sess., ch. 7, §§ 402, 420. Both amendments were part of a comprehensive effort by the legislature to reduce violence, especially among youths. Laws of 1994, 1st Spec. Sess., ch. 7, § 101. The legislature stated that the purpose of the amendments and new enactments was to
(1) [p]revent acts of violence by encouraging change in social norms and individual behaviors that have been shown to increase the risk of violence; (2) reduce the rate of at-risk children and youth . . .; (3) increase the severity and certainty of punishment for youth and adults who commit *997 violent acts; (4) reduce the severity of harm to individuals when violence occurs; (5) empower communities to focus their concerns and allow them to control the funds dedicated to empirically supported preventive efforts in their region; and (6) reduce the fiscal and social impact of violence on our society.
LAWS of 1994, 1st Spec. Sess., ch. 7, § 101. Because RCW 9.41.040 and RCW 9.41.190 were each amended with these purposes, our analysis of this legislative history in Anderson to determine whether RCW 9.41.040 was intended as a public welfare offense is persuasive. The court noted that the legislature was trying to address the problem of increasing violence in society. Anderson, 141 Wash.2d at 362, 5 P.3d 1247. While the court found that the legislative intent was inconclusive, it did not believe that the legislature intended a strict public welfare offense. Id. at 362, 364, 5 P.3d 1247. Likewise, the Warfield court found that "although the [legislative] findings certainly reference the public's health and safety, the link is not so strong that it conclusively establishes RCW 9.41.190 as a public welfare offense." Warfield, 119 Wash.App. at 879, 80 P.3d 625. Thus, case law supports the finding that the legislative history does not positively establish RCW 9.41.190 as a public welfare statute.
¶ 17 Case law is more conclusive on the third factor, i.e., whether a strict liability reading would encompass seemingly entirely innocent conduct. We begin the analysis with Staples because the Washington cases dealing with the issue cite Staples with approval. See Anderson, 141 Wash.2d 357, 5 P.3d 1247; Warfield, 119 Wash.App. 871, 80 P.3d 625; State v. Semakula, 88 Wash.App. 719, 946 P.2d 795 (1997). In Staples, the petitioner was convicted of unlawful possession of an unregistered machine gun pursuant to § 5861(d) of the National Firearms Act. Staples, 511 U.S. at 614-15, 114 S.Ct. 1793. Section 5861(d) of the act was silent regarding a knowledge requirement for violation. Staples, 511 U.S. at 605, 114 S.Ct. 1793. In determining whether Congress intended a knowledge requirement, the Court expressed concern about criminalizing a broad range of apparently innocent conduct. Id. at 615. Under a strict liability reading of the statute, criminal sanctions would potentially be imposed on "a class of persons whose mental state  ignorance of the characteristics of weapons in their possession  makes their actions entirely innocent." Id. at 614-15. Using a factual hypothetical, the Court pointed out that in the government's view, any person who has purchased what he believes to be a semiautomatic rifle or handgun, or who simply has inherited a gun from a relative and left it untouched in an attic or basement, can be subject to imprisonment, despite absolute ignorance of the gun's firing capabilities, if the gun turns out to be automatic. Id. at 615, 114 S.Ct. 1793. The Court determined that Congress did not intend to imprison a person who genuinely believed what he possessed was a semiautomatic weapon but turned out to have been worn down into, or to have been secretly modified to, an automatic weapon. Id. Thus, the court held that the government should have been required to prove that petitioner knew of the features of his firearm that brought it within the scope of the act. Id. at 624-25, 114 S.Ct. 1793.
¶ 18 Similar to the Staples court, the Anderson court was most compelled by "the fact that entirely innocent conduct may fall within the net cast by [RCW 9.41.040]." Anderson, 141 Wash.2d at 366, 5 P.3d 1247 (holding that knowledge is an element of RCW 9.41.040). The court found that the legislature did not intend to sweep entirely innocent conduct within the statute. Id. at 362, 5 P.3d 1247. To support this proposition the court cited Staples' concern with criminalizing perfectly innocent conduct. Id. at 364, 5 P.3d 1247. The court surmised that "if the State is not required to prove knowing possession of a firearm there is a distinct possibility that entirely innocent behavior would fall within the sweep of this statute." Id.
¶ 19 The Warfield court also expressed concern about criminalizing innocent conduct when it held that a defendant must knowingly possess a firearm to be convicted under RCW 9.41.190. Warfield, 119 Wash.App. at 882-83, 80 P.3d 625. The court cited Staples and found that imposing strict liability on a *998 person who lacks knowledge or reason to know that he or she possessed a prohibited item would be "overly and unfairly rigorous." Id. at 879, 80 P.3d 625. Moreover, the court noted that "[w]ithout a knowing possession element, the offense would implicate a significant amount of innocent conduct, which is a result that the legislature likely did not intend." Id. at 881, 80 P.3d 625.
¶ 20 In the present case, we are similarly concerned that possessing a firearm can be innocent conduct. Citizens have a constitutional right to bear arms under both the federal and state constitutions. U.S. CONST. amend. II; WASH. CONST. art. I, § 24. A person may lawfully own a shotgun so long as the barrel length is more than 18 inches in length and has an overall length of more than 26 inches. See RCW 9.41.010(6). RCW 9.41.190 precludes possession of a short-barreled shotgun. Moreover, the statute also criminalizes possession of a short-barreled rifle and a machine gun. The factor concerned with innocent conduct is particularly important in the case of a machine gun, which can be altered in ways not easily observable.[3] If strict liability is imposed, a person could innocently come into the possession of a shotgun, rifle, or weapon meeting the definition of a machine gun but then be subject to imprisonment, despite ignorance of the gun's characteristics, if the barrel turns out to be shorter than allowed by law or the weapon has been altered, making it a machine gun. The legislature likely did not intend to imprison persons for such seemingly innocent conduct.
¶ 21 The fourth factor, the harshness of the penalty, has also been considered in recent Washington cases. In Anderson we found that the harshness of the penalty, a five year maximum term, weighed in favor of requiring a knowledge element. Anderson, 141 Wash.2d at 365, 5 P.3d 1247. Warfield followed our decision in Anderson, concluding that the harshness of the penalty, also a five year maximum term, weighed against strict liability. Warfield, 119 Wash.App. at 882, 80 P.3d 625. The maximum imprisonment term for the present statute is likewise five years. RCW 9.41.190(4); RCW 9A.20.021(1)(c). Therefore, the harshness of the penalty in this case also weighs against strict liability.
¶ 22 The fifth factor requires us to consider the seriousness of the harm to the public. A person who possesses a weapon prohibited under RCW 9.41.190, but who does not know the characteristics that make it unlawful, may still pose a danger. However, that firearms may be dangerous must be considered along with the fact that it is lawful to own many of them. In Staples, the Court rejected the arguments that "all guns . . . are dangerous devices that put gun owners on notice that they must determine . . . whether their weapons come within the scope of the [National Firearms] Act." Staples, 511 U.S. at 608, 114 S.Ct. 1793. Instead, the Court focused on the fact that guns are lawful possessions. Id. at 610, 114 S.Ct. 1793. There is a "long tradition of widespread lawful gun ownership by private individuals in this country." Id.
¶ 23 While Washington's legislature expressed its intent to protect the public from increasing violence in society, LAWS of 1994, 1st Spec. Sess., ch. 7, § 101, in Anderson we noted that a person's unwitting possession of a firearm poses no significant danger to the public. Anderson, 141 Wash.2d at 365, 5 P.3d 1247. Moreover, punishing unwitting possessors does not further the goal of deterrence. Id.
¶ 24 The sixth factor, the ease or difficulty of defendant ascertaining the true facts, is not particularly useful in our analysis. Although the length of the barrel and/or stock of a short-barreled rifle or shotgun may easily be seen, the statute also criminalizes possession of a machine gun, and a semiautomatic firearm that has been altered into an automatic weapon may not be obvious, particularly *999 to one who is unfamiliar with firearms. Because the statute's prohibition extends to both types of firearms the same mental element, if any, must apply to both types.
¶ 25 The seventh factor requires us to consider whether requiring proof of knowledge would place too heavy a burden on the prosecution. In Staples the Court noted that "knowledge can be inferred from circumstantial evidence, including any external indications signaling the nature of the weapon." Staples, 511 U.S. at 615 n. 11, 114 S.Ct. 1793. Moreover, the Court stated that "we are confident that when the defendant knows of the characteristics of his weapon that bring it within the scope of the Act, the Government will not face great difficulty in proving that knowledge." Id. Likewise, here, proving that a defendant knew the characteristics of his firearm would not place too heavy a burden on the State.
¶ 26 The final factor considers the number of prosecutions to be expected. Generally, the fewer expected prosecutions, the more likely intent is required. Anderson, 141 Wash.2d at 365, 5 P.3d 1247 (citing 1 WAYNE R. LAFAVE & AUSTIN W. SCOTT, SUBSTANTIVE CRIMINAL LAW § 3.8, at 344 (1986)). In 2004, 16 persons were convicted of violating RCW 9.41.190.[4] The relatively few convictions pursuant to RCW 9.41.190 support the finding that knowledge is an element under the statute.
¶ 27 Considering all of the above factors leads to the conclusion that the legislature intended that the State prove that a person knew, or should have known, the characteristics that make a firearm illegal to be convicted under RCW 9.41.190. Thus, we hold that a defendant must know the characteristics of the firearm that make the firearm illegal.
¶ 28 We are not unmindful that the difference between knowing the facts that make a person's conduct illegal and ignorance of the law is a fine distinction. As noted earlier, the State is not required to prove a gun owner knows that possession of a shotgun with a barrel less than 18 inches or a stock and barrel of less than 26 inches is unlawful. The State's burden is to prove that the defendant knowingly possessed an unlawful weapon and that he knew, or should have known, the characteristics that make the weapon unlawful. These facts will be readily apparent in the case of a short-barreled rifle or short-barreled shotgun since, in most cases, the owner of such a weapon can easily determine its length. As stated above, an individual is held to know that possession of such weapons is unlawful and is also held to know the legal definition of a short-barreled shotgun, a short-barreled rifle, or a machine gun. RCW 9.41.010(4), (6), (7).[5]
¶ 29 Next we must determine if instruction 11 properly informed the jury of the State's burden. Instruction 11 can be read two ways: it can be read to require only knowing possession of the weapon, or it can be read, as defense counsel did, to require both knowledge of possession and knowledge that the weapon is a short-barreled shotgun. Because this instruction has the potential of creating confusion, we conclude that it is deficient. However, as this court has held, "`not every omission or misstatement in a jury instruction relieves the State of its burden'" so as to require reversal. State v. Berube, 150 Wash.2d 498, 505, 79 P.3d 1144 (2003) (quoting State v. Brown, 147 Wash.2d 330, 339, 58 P.3d 889 (2002)); Neder v. United States, 527 U.S. 1, 9, 119 S.Ct. 1827, 144 *1000 L.Ed.2d 35 (1999). Thus, we must determine whether the error was harmless.
¶ 30 Under the Neder test for harmless error it must appear beyond a reasonable doubt that the error did not contribute to the ultimate verdict. Id. We believe that instruction 11, while potentially ambiguous, did not mislead the jury as to the State's burden in this case. First, Williams himself argued that instruction 11, coupled with instruction 9, required the State to prove that he knowingly possessed a particular weapon, a short-barreled shotgun. Specifically, counsel told the jury,
[t]he State would submit to you that he only has to be aware of the fact that it's something. I would submit to you that he has  that knowledge that the fact, in this Instruction Number 9, is the fact of it being a short-barrelled shotgun, not that it's illegal, but the fact this it was a short-barrelled shotgun.
RP at 143.
¶ 31 Secondly, Williams' weapon was considerably modified. The barrel was shortened to only 13 inches and the overall length of the shotgun was only 24 3/8 inches. We think the jury was more than justified in finding that he knew or should have known that the barrel of his shotgun was less than 18 inches (5 inches shorter than the law permits) and thus met the legal definition of a short-barreled shotgun. Accordingly, we find that any error in this case was harmless.
¶ 32 The Court of Appeals is affirmed.
We Concur: SUSAN OWENS and MARY E. FAIRHURST, JJ.
ALEXANDER, C.J. (concurring).
¶ 33 I agree with the majority that there is no reversible error here. Thus, I join in the decision to affirm the Court of Appeals. I write separately to explain my disagreement with the majority's conclusion that "the State must prove that a defendant knows, or should know, the characteristics of the firearm that make it unlawful." Majority at 994. In my view, it is sufficient for the State to show merely that the defendant knows, or should know, that he is in possession of the firearm at issue.[1]
¶ 34 Requiring the State to prove the defendant's knowledge of the specific characteristics of the firearm that make it illegal is tantamount to requiring the State to prove that the defendant knew that he was acting unlawfully when he possessed the firearm. Ignorance of the law is not a valid defense. As a result, the State should not have to prove, as the majority would have it do, the defendant's knowledge of the law.
¶ 35 The jury instruction given by the trial judge in this case was consistent with our decision in State v. Anderson, 141 Wash.2d 357, 5 P.3d 1247 (2000), a case in which we were concerned solely with the defendant's unwitting possession of an illegal firearm. While, arguably, it might be proper for a trial court to instruct the jury that it must find that the defendant knew or should have known of the illegal characteristics of the firearm when these characteristics were not readily apparent to the naked eye,[2] we do not have such a situation here. Unlike the defendant in Anderson, Matthew Williams did not claim that he unwittingly possessed an illegal firearm. Furthermore, the significantly shortened barrel of the sawed-off shotgun possessed by Williams was clearly visible to even the most casual of observers.
¶ 36 In my opinion, when instructing the jury under RCW 9.41.190 in a case such as we have here, the trial judge need instruct only that the defendant had knowledge that he possessed the firearm. It is not necessary to instruct that the defendant was knowledgeable of the characteristics of the *1001 firearm that made its possession illegal. Consequently, because I conclude there was no defect in the "to convict" instruction submitted to the jury in this case, I would not, as the majority must, reach the harmless error question. Therefore, I concur only in the result the majority reaches here.
I CONCUR: Justice BOBBE J. BRIDGE.
J.M. JOHNSON, J. (dissenting).
¶ 37 The majority recognizes the high standard before possession of certain firearms may be held criminal: "the legislature intended that the State prove that a person knew, or should have known, the characteristics that make a firearm illegal to be convicted under RCW 9.41.190." Majority at 999. While the majority aptly states the law, it immediately misapplies it. I must disagree with the conclusion that an admittedly "potentially ambiguous" and "deficient" to convict jury instruction, which here implicates constitutionally protected rights, amounts to harmless error. See majority at 999-1000. Thus, I dissent.
¶ 38 These holdings involve a particularly sensitive and limited area of regulation, since both the United States and Washington State Constitutions protect a "right . . . to bear arms. . . ." U.S. CONST. amend. II; WASH. CONST. art. I, § 24. Thus, strict analysis is required in this case by our precedent and by our obligation to adhere to the analysis of a similar case by the United States Supreme Court in Staples v. United States, 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994).
¶ 39 The majority's recognition that the State must prove a defendant knows the characteristics that make a firearm illegal means that knowledge of the characteristics that make the firearm illegal is an essential element of the crime. "An `essential element is one whose specification is necessary to establish the very illegality of the behavior.'" State v. Tinker, 155 Wash.2d 219, 221, 118 P.3d 885 (2005) (quoting State v. Johnson, 119 Wash.2d 143, 147, 829 P.2d 1078 (1992)).
¶ 40 "The State must prove every essential element of a crime beyond a reasonable doubt for a conviction to be upheld." State v. Byrd, 125 Wash.2d 707, 713, 887 P.2d 396 (1995). Thus, a "to convict" instruction must set forth all of the elements of the crime because the instruction serves as a yardstick by which the jury measures the evidence to determine guilt. State v. Smith, 131 Wash.2d 258, 262-63, 930 P.2d 917 (1997).
¶ 41 It is constitutionally required that the jury be instructed on all essential elements of the crime. State v. Linehan, 147 Wash.2d 638, 653, 56 P.3d 542 (2002). A jury instruction that relieves the State of its burden to prove all of the elements of the crime is reversible error. Id. at 653-54, 56 P.3d 542. A constitutional error is harmless only if we are convinced beyond a reasonable doubt that any reasonable jury would reach the same result absent the error. Id.
¶ 42 Here, the to convict instruction did not contain all the essential elements of the crime because it did not instruct the jury that it had to find Mr. Williams knew the characteristics of the shotgun that made it illegal. Without such an instruction, the jury did not find that element beyond a reasonable doubt.
¶ 43 There are two reasons why the court's failure to instruct the jury regarding an essential element of the crime cannot be harmless error as the majority claims. First, the jury was not aware that such knowledge was an element of the crime and thus did not have the opportunity to determine whether the element was proved. Second, and worse, the State specifically told the jury that it was not an element of the crime. Report of Proceedings (RP) at 138, 146.
¶ 44 The trial court did not instruct the jury that knowledge was an essential element: that it must be proved beyond a reasonable doubt in order to convict. Therefore, the jury was not instructed to discuss and find all the essential elements of the crime.
¶ 45 The court did instruct the jury that "[a] person knows or acts knowingly or with knowledge when he or she is aware of a fact, circumstance or result which is described by law as being a crime, whether or not the person is aware that the fact[,] circumstance or result is a crime." Clerk's Papers (CP) at 54 (Instruction 9). However, "`[a] jury is *1002 not required to search other instructions to see if another element should have been included in the instruction defining the crime.'" Smith, 131 Wash.2d at 264, 930 P.2d 917 (quoting State v. Aumick, 126 Wash.2d 422, 431, 894 P.2d 1325 (1995)).
¶ 46 Moreover, the to convict jury instruction merely instructed the jury that to convict, it needed to find "[t]hat on or about April 23[,] 2003 the defendant did knowingly have in his possession or under his control a short-barreled shotgun." CP at 56 (Instruction 11). The word "knowingly" in this instruction applies to the words "having in his possession or under his control." The instruction does not direct the jury to find that defendant must know the characteristics of the firearm that make it illegal.
¶ 47 Even coupled with instruction 9, the to convict instruction (11) is insufficient because instruction 9 merely instructs the jury on the meaning of knowledge that it is to apply in determining whether defendant knowingly "possessed or controlled" the firearm.
¶ 48 An appropriate and simple to convict instruction that instructed the jury to find all the essential elements of the crimes should have read something like this, "that on or about April 23, 2003, the defendant did knowingly have in his possession a short-barreled shotgun and the defendant knew the characteristics that make the firearm illegal." The court did not instruct the jury to make this two-part finding.
¶ 49 Despite the court's failure to instruct the jury on the essential elements of the crime, the majority finds harmless error because the majority concludes the jury was not misled "as to the State's burden in the case." Majority at 16. However, the State itself misled the jury as to the burden. Therefore, such error cannot be harmless as the jury was surely confused as to the essential elements of the crime and who had the burden to prove each.
¶ 50 In closing argument, the State argued that "knowingly does not mean that Mr. Williams had to know that that particular item was a short-barrelled shotgun." RP at 138 (emphasis added). In response, defense counsel attempted to argue that instruction 9 required knowledge of the fact that the gun was a short-barreled shotgun. RP at 143.
¶ 51 In rebuttal, the State again stated that "he doesn't have to know that it's a short-barrelled shotgun." RP at 146 (emphasis added). The State's argument to the jury is incorrect even given today's majority holding. Knowledge of the characteristics of the firearm is an essential element of the crime, but the State specifically told the jury that it was not an element of the crime.
¶ 52 At best, the State and defense arguments left the jury confused and unable to determine what the essential elements of the crime were. "It cannot be said that a defendant has had a fair trial if the jury must guess at the meaning of an essential element of a crime or if the jury might assume that an essential element need not be proved." Smith, 131 Wash.2d at 263, 930 P.2d 917. Failing to properly instruct the jury regarding the essential elements of the crime is not harmless error here. I dissent.
WE CONCUR: TOM CHAMBERS, CHARLES W. JOHNSON, RICHARD B. SANDERS, JJ.
NOTES
[1] The State also argues that even if the "to convict" instruction is erroneous, Mr. Williams invited the error because he did not object. Because the State raises this argument for the first time in its supplemental brief, we decline to address it. State v. Collins, 121 Wash.2d 168, 847 P.2d 919 (1993); Douglas v. Freeman, 117 Wash.2d 242, 814 P.2d 1160 (1991). Because we decline to reach this issue, we do not reach Mr. Williams' motion to strike that portion of the State's brief addressing it.
[2] The parties agree that the State is not required to prove Williams knew that possessing a short-barreled shotgun is unlawful. In order to prevent Williams from arguing that he did not know that he was violating the law by possessing a short-barreled shotgun, the State proposed an instruction advising the jury that ignorance of the law is not an excuse. Although the trial court declined to give the State's proposed instruction, the court told defense counsel that he could not argue that ignorance of the law excused Williams' conduct. Counsel responded that he only intended to argue that Williams did not know the weapon was a short-barreled shotgun, that is, Williams did not know the characteristics of the weapon that made it illegal.
[3] A machine gun is defined as "any firearm known as a machine gun, mechanical rifle, submachine gun, or any other mechanism or instrument not requiring that the trigger be pressed for each shot and having a reservoir clip, disc, drum, belt, or other separable mechanical device for storing, carrying, or supplying ammunition which can be loaded into the firearm, mechanism, or instrument, and fired therefrom at the rate of five or more shots per second," RCW 9.41.010(7).
[4] Wash. Sentencing Guidelines Comm'n, Statistical Summary of Adult Felony Sentencing, Fiscal Year 2004, 9, available at http://www.sgc.wa.gov/Informational/Publications.htm (last visited Nov. 28, 2005).
[5] The concurrence apparently wants it both ways. On the one hand, the concurrence says that RCW 9.41.190 only requires the State to prove that the defendant knew he possessed the firearm at issue, concurrence at 1, but then, inconsistently, appears to agree the State must prove knowledge of the characteristics rendering possession of the firearm unlawful if those characteristics are not "readily apparent to the naked eye." Concurrence at 1000. RCW 9.41.190 either requires the State to prove that the defendant had knowledge of the weapon's illegal characteristics or it does not. The better approach in cases such as the one presented here, where the illegal characteristic is visible, is to give the additional instruction that ignorance of the law is no excuse for possession of an unlawful firearm under RCW 9.41.190.
[1] In this regard, I agree with the Court of Appeals' reasoning that under RCW 9.41.190 the State must prove only that the defendant knowingly possessed the firearm, not that he possessed the firearm knowing it was illegal. State v. Williams, 125 Wash.App. 335, 340, 103 P.3d 1289 (citing State v. Warfield, 119 Wash.App. 871, 80 P.3d 625 (2003)), review granted, 155 Wash.2d 1001, 120 P.3d 578 (2005).
[2] For example, the instruction sanctioned by the majority might be appropriate where the internal mechanism of a semiautomatic weapon had previously been altered to allow it to fire automatically. In such a case, the alteration of the firearm would not be readily apparent to a person who later possesses it.