# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57955-3-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JOSHUA JAMES ALLEN, | |
| Appellant. | |

CHE, J. — Joshua James Allen appeals his conviction and sentence for one count each of first degree rendering criminal assistance, attempted second degree robbery, and fourth degree assault.

Allen drove James Luna and Travis Bartholomew to and from a residence which Luna and Bartholomew entered without permission and with the intent to commit a crime therein. Allen punched Tammy Kissner, who was present at the residence. The State charged Allen with attempted second degree robbery, fourth degree assault, and first degree rendering criminal assistance. The charging document alleged, for the crime of first degree rendering criminal assistance, that Allen "with the intent to prevent, hinder, and delay the apprehension of Travis Bartholomew, who had committed or was being sought for a Class A Felony, and knowing that such person had committed a crime, did harbor and conceal such person, and/or provide such person with transportation or other means of avoiding discovery and apprehension." Clerk's Papers (CP) at 1.

The trial court found Allen guilty as charged and imposed a $500 crime victim penalty assessment (VPA) as part of Allen's judgment and sentence.

On appeal, Allen argues that (1) the charging document was constitutionally insufficient as it did not include the essential elements of first degree rendering criminal assistance and (2) the VPA should be stricken from his judgment and sentence. Additionally, in a statement of additional grounds (SAG), Allen challenges his convictions by making several assertions, including assigning error to the trial court's determination that Allen intended to prevent, hinder, and delay the apprehension of Bartholomew.

We hold that the information was constitutionally sufficient and accept the State's concession that the VPA should be stricken from Allen's judgment and sentence. For Allen's SAG claims, we hold that each fails.

Accordingly, we affirm Allen's conviction and remand the matter to the trial court to strike the VPA.

FACTS

BACKGROUND

In August 2022, Allen's cousin, Bartholomew, called Allen and told him he was planning to rob Allen's stepdad, Tom Ludvigsen. When Bartholomew told Allen that he had access to a gun and "wanted to pull the trigger," Allen told Bartholomew that he did not need a gun. Rep. of Proc. (Jan. 26, 2023) (RP) at 123. Allen offered to pick up Bartholomew but stated that he did not want guns in his car.

Allen met Bartholomew and drove him and another person, Luna, to Ludvigsen's residence. When the three arrived, Bartholomew and Luna entered the residence and contacted

Ludvigsen, Ludvigsen's girlfriend, Kissner, and Ludvigsen's daughter. Bartholomew and Luna stated that they were there to rob Ludvigsen. Through the open front door, Allen observed Bartholomew pull out a gun. Ludvigsen suggested they move outside and, as he moved outside of the residence, he and Kissner both noticed Allen outside the residence. According to Kissner and Ludvigsen, Kissner then went around Ludvigsen to confront Allen. As Kissner went outside, Allen punched her in the face. After Allen punched Kissner, someone hit Ludvigsen in the back of his head.

According to Allen, he never had any direct contact with Kissner and believed that Kissner did not like him. Allen stood fifteen to twenty feet away from the residence before Bartholomew came out and Allen told him "let's go." RP at 133. Allen directed the men to leave with him because he noticed Bartholomew with a gun and Allen was scared, believing that, if he left without them while Bartholomew was armed, "something bad [was] going to happen." RP at 134. Allen, Luna, and Bartholomew got in Allen's car and left.

PROCEDURAL HISTORY

The State charged Allen with first degree rendering criminal assistance, attempted second degree robbery, and fourth degree assault. For the charge of rendering criminal assistance, the information stated the following, in full:

COUNT 1

On or about August 9, 2022, [] Allen, in Grays Harbor County, Washington with the intent to prevent, hinder, and delay the apprehension of [] Bartholomew, who had committed or was being sought for a Class A Felony, and knowing that such person had committed a crime, did harbor and conceal such person, and/or provide such person with transportation or other means of avoiding discovery and apprehension;

3

> CONTRARY TO RCW 9A.76.070(2)(1) & (a) and against the peace and dignity of the State of Washington.

CP at 1 (boldface omitted).

The information provided the following for Count II, attempted robbery in the second degree:

> a crime based on a series of acts connected together with Count 1, committed as follows:
>
> On or about August 9, 2022 [] Allen, acting as a principal or accomplice to Robbery in the Second Degree, pursuant to RCW 9A.08.020, in Grays Harbor County, Washington, and with the intent to commit that crime: [] Allen did an act which was a substantial step towards the commission of that crime, and that, with intent to commit theft, he, or an accomplice, did attempt to unlawfully take personal property that he did not own from the person or in the presence of [] Ludvigsen, against such person's will, by use or threatened use of immediate force, violence, or fear of injury to said person or the property of said person or the person or property of another.

CP at 2. Lastly, the information charged Allen with attempted second degree robbery and fourth degree assault involving Kissner as the victim, but did not mention Bartholomew nor "a Class A Felony." CP at 1-2.

Allen's case proceeded to a bench trial where multiple witnesses testified consistently with the facts outlined above and the trial court admitted as exhibits an audio recording of Allen's statement to law enforcement and various photographs, including photographs of the scene, Kissner's injuries, a picture of Allen's hand showing an injury.[1] The trial court found Allen guilty of first degree rendering criminal assistance, attempted second degree robbery, and fourth degree assault.

---

[1] Allen testified that his hands were injured while taking out his car's alternator, days prior to the interaction with Kissner and Ludvigsen.

The court issued written findings of fact and conclusions of law. With regard to first degree rendering criminal assistance, the trial court specifically found that "despite any other stated intention of [Allen] for driving [] Luna and [] Bartholomew away from the crime scene where [Allen] knew that they had just committed a Class a felony, [Allen's] intentions were not a legal defense." CP at 22. Regarding the attempted second degree robbery, the court found that Allen "acted as an accomplice [] in that he drove the principal actors to and from the crime scene, as well as assault[ed] one of the victims by punching them." CP at 22. Regarding fourth degree assault, the trial court found "the combined evidence of the testimony of [] Kissner, as well as the photographic evidence of her injury were sufficient to establish that [Allen] assaulted her." CP at 22.

At sentencing, the trial court made a specific finding that Allen was indigent as defined by RCW 10.101.010(3)(a)-(c). It its judgment, the trial court ordered a total confinement amount of 364 days, ordered the payment of restitution, and imposed a $500 crime VPA.

Allen appeals.

## ANALYSIS

### I. SUFFICIENCY OF THE CHARGING DOCUMENT

For the first time on appeal, Allen argues that the charging document was constitutionally insufficient as it failed to include all the essential elements for first degree rendering criminal assistance. Allen asserts that the information specifically omitted "any element of knowledge of the crime committed." Br. of Appellant at 14. We disagree.

A.      *Legal Principles*

Defendants have a constitutional right to be informed of "the nature and cause of the accusation" against them.  U.S. CONST. amend. VI; WASH. CONST. art 1, § 22; *see State v. Hugdahl*, 195 Wn.2d 319, 324, 458 P.3d 760 (2020).  Thus, to be constitutionally sufficient, an information must set forth all essential elements of the crime, statutory and nonstatutory, and the particular facts supporting them.  *State v. Derri*, 199 Wn.2d 658, 691, 511 P.3d 1267 (2022).

"'Essential elements' are 'the facts that the State must prove beyond a reasonable doubt to establish that the defendant committed the charged crime.'"  *Derri*, 199 Wn.2d at 691 (quoting *State v. Recuenco*, 163 Wn.2d 428, 434, 180 P.3d 1276 (2008)).  The primary purpose of the essential element requirement is "'to apprise the accused of the charges against him or her and to allow the defendant to prepare a defense.'"  *State v. Pry*, 194 Wn.2d 745, 752, 452 P.3d 536 (2019) (quoting *State v. Vangerpen*, 125 Wn.2d 782, 787, 888 P.2d 1177 (1995)).  The charging document must do more than simply name the offense and list the essential elements: it must allege the particular facts supporting them.  *Id*.  In evaluating whether the charging document was sufficient, we may look to other counts charged in the information.  *Id*.

When a defendant challenges a charging document for the first time on appeal, we liberally construe the document in favor of validity.  *Derri*, 199 Wn.2d at 663 (citing to *State v. Kjorsvik*, 117 Wn.2d 93, 102, 812 P.2d 86 (1991)).  In doing so, we first ask "whether the necessary facts appear in any form in the charging document or whether they can be found by fair construction therein."  *Id.* at 691.  Precise recital of the essential elements of the crime is not required so long as the document can be construed "to give notice of or to contain in some manner" the crime's essential elements.  *See State v. McCarty*, 140 Wn.2d 420, 425, 998 P.2d

296 (2000); *see also Pry*, 194 Wn.2d at 752. Additionally, we may examine other charged counts contained within the face of the charging document to assess if the document reasonably apprised the defendant of the charged crime's elements. *State v. Nonog*, 169 Wn.2d 220, 228, 230-31, 237 P.3d 250 (2010); *see also Pry*, 194 Wn.2d at 753.

If the necessary facts are present, we then do not reverse the conviction "unless the defendant can show 'that he or she was nonetheless actually prejudiced by the inartful language which caused a lack of notice.'" *Derri*, 199 Wn.2d at 691 (quoting *Kjorsvik*, 117 Wn.2d at 106). If the necessary facts cannot be found by liberal construction, "prejudice is presumed and reversal is necessary." *State v. Zillyette*, 173 Wn.2d 784, 786, 270 P.3d 589 (2012).

B.      *The Information Apprised Allen of the Necessary Facts for First Degree Rending Criminal Assistance*

Allen asserts that the information was constitutionally insufficient because it failed to include the crime's essential element of knowledge.

To determine whether the information sufficiently presented the necessary facts of the alleged crime, we first consider the essential elements of first degree rendering criminal assistance. *See Derri*, 199 Wn.2d at 692.

Chapter 9A.76 RCW sets out three degrees for the crime of rendering criminal assistance. RCW 9A.76.070 (in the first degree), .080 (in the second degree), .090 (in the third degree). A person violates RCW 9A.76.070 if one "renders criminal assistance" to another person "'who has committed or is being sought for murder in the first degree or any class A felony or equivalent juvenile offense.'" *State v. Budik*, 173 Wn.2d 727, 734, 272 P.3d 816 (2012) (quoting the statute). Because to "render[] criminal assistance" is defined in a related statute, our courts

have held that the essential elements for rendering criminal assistance crimes include those contained in the related statute, RCW 9A.76.050. *Pry*, 194 Wn.2d at 755-56; *Budik*, 173 Wn.2d at 734.

RCW 9A.76.050 provides that a defendant renders criminal assistance if the defendant (1) knows that the other person has committed or is being sought by law enforcement for a crime or juvenile offense or has escaped a detention facility, (2) intends to "prevent, hinder, or delay the apprehension or prosecution" of that other person, and (3) either:

> (1) Harbors or conceals such person; or
>
> (2) Warns such person of impending discovery or apprehension; or
>
> (3) Provides such person with money, transportation, disguise, or other means of avoiding discovery or apprehension; or
>
> (4) Prevents or obstructs, by use of force, deception, or threat, anyone from performing an act that might aid in the discovery or apprehension of such person; or
>
> (5) Conceals, alters, or destroys any physical evidence that might aid in the discovery or apprehension of such person; or
>
> (6) Provides such person with a weapon.

*See Pry*, 194 Wn.2d at 754-55; *Budik*, 173 Wn.2d at 734. In explaining why RCW 9A.76.050 provides essential elements and is not merely definitional, our Supreme Court explained that the statute requires that the defendant has "the intent to prevent, hinder, or delay the apprehension or prosecution of someone that he or she *knows* has committed a crime or is sought by authorities for commission of a crime, and action on behalf of that person." *Pry*, 194 Wn.2d at 756 (some emphasis omitted).

Here, the State's information alleged that:

[o]n or about August 9, 2022, [] Allen, in Grays Harbor County, Washington with the intent to prevent, hinder, and delay the apprehension of [] Bartholomew, *who had committed or was being sought for a Class A Felony, and knowing that such person had committed a crime*, did harbor and conceal such person, and/or provide such person with transportation or other means of avoiding discovery and apprehension;

CP at 1 (emphasis added).

The information clearly alleged an element of knowledge by stating that Allen "knowing that [Bartholomew] had committed a crime, did harbor and conceal [him]," among other acts. CP at 1. The information additionally alleged particular facts related to the other essential elements by alleging that Allen had "the intent to prevent, hinder, and delay the apprehension of [] Bartholomew" and completed at least one of the acts outlined in RCW 9A.76.050: harbor and conceal or provide transportation or other means of avoiding discovery and apprehension. CP at 1.

Allen asserts that the knowledge element requires a defendant to know the characteristics of the conduct the rendered individual engaged in, which in turn, equated to the degree of the assisted-to offense. In the alternative, Allen argues that a defendant must at least know the general nature of the offense that the assisted individual committed which, in Allen's case, could be burglary or robbery. However, his arguments fail.

Even if we assume without deciding that either of Allen's constructions are correct, a liberal construction of the information in favor of validity includes an allegation that Allen knew

Bartholomew's crime qualified as a Class A felony.[2] *See Derri*, 199 Wn.2d at 691. Although the information inartfully alleged that Allen knew Bartholomew committed "a crime," the information provided some characteristics of the crime in question by stating immediately prior that Bartholomew had committed or was being sought for a Class A felony. In fair construction, the language of Count I placed Allen on notice that the State was alleging that Allen knew Bartholomew committed a Class A felony. *See Derri*, 199 Wn.2d at 691.

Moreover, while the language in Count I provided sufficient notice, the information's Count 2, the attempted second degree robbery, provided additional notice to Allen that the "crime" Allen allegedly had knowledge of involved the facts related to a robbery. Count 2 stated:

---

[2] To the extent that Allen argues that case law supports the information being constitutionally defective because knowledge of conduct labeled as a "Class A felony" is not sufficient, his arguments are not persuasive. *See* Br. of Appellant at (1) 13 (citing to *State v. Williams*, 158 Wn.2d 904, 909, 148 P.3d 993 (2006), a prosecution for possession of an unlawful firearm required that the defendant know or should have known the characteristics that made the firearm illegal), (2) 17 (citing to *State v. Anderson*, 63 Wn. App. 257, 818 P.2d 40 (1991), a sufficiency of the evidence case), and (3) 20-21 (citing to multiple accomplice liability cases). None of these cases stand for the proposition that the information must specify the Class A or equivalent juvenile offense or such offense's underlying characteristics. Additionally, Allen's reliance on the relevant Washington's Pattern Jury Instructions (WPIC) is likewise unpersuasive due to the recognized difference between the purpose of charging documents and jury instructions. Wash. Ct. of Appeals oral argument, *State v. Allen*, No. 57955-3-II (Dec. 16, 2024), at 1 min., 40 sec. through 1 min., 47 sec. *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-2-court-of-appeals-2024121019/?eventID=2024121019; Statement of Additional Auth. Following Arg. at 2-3 (citing to WPIC 120.11); *State v. Porter*, 186 Wn.2d 85, 93, 375 P.3d 664 (2016) (rejecting an appellant's argument that charging documents must mirror pattern to-convict jury instructions and, in doing so, noting that the two serve "very different purposes").

*a crime based on a series of acts connected together with Count 1 . . .* Allen, acting as a principal or accomplice to Robbery in the Second Degree, . . . and that, with intent to commit theft, he, or an accomplice, did attempt to unlawfully take personal property that he did not own from the person or in the presence of [] Ludvigsen, against such person's will, by use or threatened use of immediate force, violence, or fear of injury to said person or the property of said person or the person or property of another.

CP at 2 (emphasis added). And so, even with the inartful language, the information can still be constitutionally sufficient with the necessary elements for first degree rendering criminal assistance fairly implied. *See Kjorsvik*, 117 Wn.2d at 111.

Because we construe the information as giving notice of or at least containing in some manner the essential elements of first degree rendering criminal assistance, we next consider whether Allen can show that he was actually prejudiced by the inartful language. *See McCarty*, 140 Wn.2d at 425; *Derri*, 199 Wn.2d at 691. As Allen does not argue any prejudice occurred, his argument that the information caused a lack of notice fails. *See Derri*, 199 Wn.2d at 691.

We hold that the information was constitutionally sufficient and affirm Allen's first degree rendering criminal assistance conviction.

## II. VPA

Allen argues that we should strike the VPA from his judgment and sentence because he is entitled to the benefit of the VPA statute's recent amendment. The State concedes that Allen is so entitled. We accept the State's concession.

The State's concession is supported by law because, effective July 1, 2023, the revised statute governing the VPA, RCW 7.68.035(4), prohibits courts from imposing a VPA if the trial court finds, at the time of sentencing, that the defendant is indigent as defined in RCW 10.01.160(3). LAWS OF 2023, ch. 449, § 1; *State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048

(2023), *review granted,* 4 Wn.3d 1009 (2025). Although not in effect at the time of sentencing, this amendment applies to cases on direct appeal, such as Allen's. *See Ellis*, 27 Wn. App. 2d at 16.

The concession is additionally supported by the facts of the case as the trial court made a specific finding at sentencing that Allen was indigent as defined by RCW 10.01.160(3). And yet, despite this finding, the trial court imposed a VPA on Allen's sentence.

With the State's concession supported by both law and facts, we accept the State's concession and strike the VPA from Allen's judgment and sentence.

### III. STATEMENT OF ADDITIONAL GROUNDS

In Allen's SAG, Allen appears to make three sufficiency of the evidence claims relating to each of Allen's convictions.

When a defendant challenges the sufficiency of the evidence following a bench trial, we evaluate whether substantial evidence supports the trial court's finding of fact and, if so, whether the findings support the conclusions of law. *State v. A.X.K.*, 12 Wn. App. 2d 287, 293, 457 P.3d 1222 (2020). If a rational, fair-minded individual would be persuaded by the presented evidence, when viewed in the light most favorable to the State, such evidence is substantial. *Id*. We treat any unchallenged findings of fact as verities. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). Additionally, we evaluate both circumstantial and direct evidence equally. *State v. Smith*, 185 Wn. App. 945, 957, 344 P.3d 1244 (2015); *see also State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). Furthermore, we do not resolve conflicting testimony, disturb credibility determinations, or weigh evidence. *A.X.K.*, 12 Wn. App. 2d at 298.

First, Allen asserts that he did not intend to prevent, hinder, or delay the apprehension of Bartholomew (1) because Bartholomew was neither charged nor went to jail following the incident and (2) because he just wanted Bartholomew and Luna to go with him so "something bad" would not happen. SAG, PDF page 4.

But the language of the first degree rendering criminal assistance statute does not require the State to charge or arrest the assisted person. *See* RCW 9A.76.050, .070. Additionally, Allen's intent to prevent, hinder, or delay the apprehension of Bartholomew was supported by sufficient evidence. Allen did not deny driving Bartholomew away from the residence, even knowing that Bartholomew went to the residence to rob Ludvigsen and having seen Bartholomew pull out a gun while inside talking to Ludvigsen. From Allen's own testimony, a fair-minded, rational trier of fact could have concluded that Allen met the crime's intention element and, therefore, the trial court's determination was supported by substantial evidence. *A.X.K.*, 12 Wn. App. 2d at 293.

Next, regarding attempted second degree robbery, Allen argues again that neither Bartholomew nor Luna faced charges nor went to jail. Allen also asserts that he did not want the robbery to happen, he did not want anything from the residence, and he did not ask for anything.

Under accomplice liability, one way a person is guilty of a crime committed by another person if they "[a]id[] or agree[] to aid such other person in planning or committing" the crime, while knowing "that [their conduct] will promote or facilitate the commission of the crime." RCW 9A.08.020(1), (2)(c), (3)(a); *see State v. Birge*, 16 Wn. App. 2d 16, 31, 478 P.3d 1144 (2021). The State must prove—which it can do through circumstantial evidence—that the defendant actually knew that they were promoting or facilitating the other's commission of the

13

crime. *State v. Allen*, 182 Wn.2d 364, 374, 341 P.3d 268 (2015). And one has actual knowledge if they "'ha[ve] information which would lead a reasonable person in the same situation to believe' that [they were] promoting or facilitating the crime eventually charged." *Allen*, 183 Wn.2d at 374 (quoting RCW 9A.08.010(1)(b)(ii)).

The trial court found Allen committed attempted second degree robbery as an accomplice.[3] A person commits second degree robbery if they "unlawfully take[] personal property from the person of another or in his [or her] presence against his [or her] will by the use or threatened use of immediate force, violence, or fear of injury to that person or his [or her] property or the person or property of anyone" with the specific intent to steal. RCW 9A.56.190 (definition of a robbery); RCW 9A.56.210 ("A person is guilty of robbery in the second degree if he or she commits robbery."). And one is guilty of attempting to commit a crime when they take a "substantial step toward the commission of that crime" with the intent to commit that specific crime. RCW 9A.28.020. Therefore, for the trial court to find that Allen committed attempted second degree robbery as an accomplice, as charged here, the State had to prove beyond a reasonable doubt that (1) Allen aided Bartholomew or Luna in taking a substantial step towards robbing Ludvigsen or Kissner, and (2) Allen actually knew he was promoting or facilitating their attempt of second degree robbery.

The elements of this crime do not require the State to charge or secure a conviction of the principal, Bartholomew, to prove the crime of attempted second degree robbery under

---

[3] Because the trial court's oral decision is not inconsistent with the trial court's written findings and conclusions and, merely, clarifies which component of the factor the trial court relied on, we may consider the trial court's oral decision as well. *State v. Kull*, 155 Wn.2d 80, 88, 118 P.3d 307 (2005).

accomplice liability. Nor did the trial court have to find that Allen had the specific intent to rob, want, or ask for something from the victims to find him guilty. *See Birge*, 16 Wn. App. 2d at 32. Sufficient evidence supported the trial court's finding that Allen's conduct met the elements of the crime.

Last, Allen challenges the fourth degree assault conviction by appearing to contend that he was never in the residence when Kissner was injured and that witnesses testified Kissner was punched before Ludvigsen who was the first one out of the residence and was punched on his way out.

To convict Allen of fourth degree assault, the State had to prove beyond a reasonable doubt that Allen assaulted Kissner by intending to touch or strike Kissner in a harmful or offensive way. *See* RCW 9A.36.041; *State v. Jarvis*, 160 Wn. App. 111, 119, 246 P.3d 1280, *review denied* 171 Wn.2d 1029 (2011). It was not disputed that Allen never entered the residence and Kissner was punched before Ludvigsen. However, both Ludvigsen and Kissner testified that Ludvigsen exited the residence first, Allen then punched Kissner when she exited the residence by going around Ludvigsen, and someone hit Ludvigsen thereafter. Admitted exhibits included photographs of Kissner's injuries as well as images of Allen's hands which were also injured. In considering Kissner's testimony and the admitted photograph of her injuries, the trial court found that Allen assaulted Kissner. Viewing the evidence in the light most favorable to the State and declining to engage in weighing the evidence or resolving conflicting testimony, we hold that substantial evidence supported the trial court's determination. *See A.X.K.*, 12 Wn. App. 2d at 293, 298.

We hold that Allen's SAG claims fail.

15

CONCLUSION

We affirm Allen's convictions, but remand the matter back to the trial court for further proceedings consistent herein.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Che, J._

Che, J.

We concur:

_Maxa, P.J._

Maxa, P.J.

_Price, J._

Price, J.