STATE OF NORTH CAROLINA v. GERALD HASKINS, DEFENDANT

No. COA02-1225

(Filed 16 September 2003)

1. **Firearms and Other Weapons— possessing a weapon on educational property—criminal intent—willfulness**

    The trial court did not err in a prosecution of a bail bondsman for possessing a weapon on educational property by failing to instruct on criminal intent or willfulness, because: (1) N.C.G.S. § 14-269.2 by its plain terms does not include any reference to criminal intent or mens rea; (2) the purpose of N.C.G.S. § 14-269.2 is to deter students and others from bringing any type of gun onto school grounds based on the increased necessity for safety in our schools; and (3) contrary to defendant's assertion that the exemptions under N.C.G.S. § 14-269.2 violate his equal protection rights, the exemptions bear a rational relationship to a legitimate government interest.

2. **Firearms and Other Weapons— possessing a weapon on educational property—affirmative defense of reasonable necessity unavailable**

    The trial court did not err in a prosecution of a bail bondsman for possessing a weapon on educational property by instructing the jury that the affirmative defense of reasonable necessity was not a defense to N.C.G.S. § 14-269.2 and by failing to allow

defense counsel to read the law of necessity to the jury, because: (1) defendant bail bondsman could have left his gun safely off campus and then notified the school principal that an armed fugitive was on the premises and that the school needed to be secured; (2) defendant could have notified the police or could have asked the school principal to notify the police; and (3) defendant could have avoided the statutory violation by leaving his gun in a locked car or with one of his colleagues and then entered school grounds.

**3. Firearms and Other Weapons— possessing a weapon on educational property—bail bondsman—state actor exemption inapplicable**

The trial court did not err in a possessing a weapon on educational property case by concluding as a matter of law that defendant was not a state actor exempt from the prohibitions of N.C.G.S. § 14-269.2 even though defendant was a bondsman attempting to arrest a fugitive, because: (1) bail bondsmen and runners are not officers of the state; and (2) the statutory right of arrest given to a surety under N.C.G.S. § 58-71.30 does not create a law enforcement officer in the person of the bail bondsman.

Appeal by defendant from judgment entered 10 April 2002 by Judge Wade Barber in Superior Court, Orange County. Heard in the Court of Appeals 19 August 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Sandra Wallace-Smith, for the State.*

*Miles & Montgomery, by Mark Montgomery for the defendant-appellant.*

WYNN, Judge.

By this appeal, defendant, Gerald Haskins, presents the following issues for our consideration: (I) Whether the trial court's failure to instruct on criminal intent constitutes error; (II) Whether the trial court's failure to give an instruction on the affirmative defense of reasonable necessity and to allow defense counsel to read the law of necessity to the jury constituted reversible error; and (III) Whether the trial court erroneously concluded as a matter of law that defendant was not a state actor exempt from the prohibitions of G.S. § 14-269.2. After careful review, we find no error in the proceedings below.

STATE v. HASKINS

[160 N.C. App. 349 (2003)]

On the morning of 22 March 2001, defendant, a licensed Bail Runner, was in pursuit of Lakendris McAdoo, a fugitive facing felony drug charges.[1] McAdoo had failed to appear for a court appearance and a court order had been issued for his arrest. Defendant worked for the bonding company that had issued McAdoo's bond. He, along with three other bondsmen, searched for McAdoo intending to arrest him under their statutory authority as Bondsmen. Each of the bondsmen wore jackets with the word "Bondsmen" written across the back.

Pertinent to this appeal, defendant pursued McAdoo to an elementary school, entered the school with a gun in his holster, asked a faculty member if she had seen anyone, and then exited the back of the school. Meanwhile, school personnel called the Orange County Sheriff's Department and placed the school on "lockdown," a procedure in which the teachers keep the children in locked classrooms for their safety. Shortly thereafter, an investigator arrived at the school, approached defendant, retrieved his weapon and arrested him for possessing a weapon on educational property in violation of G. S. § 14-269.2(b).

Following his conviction of the charged offense by a jury, the trial court sentenced defendant to a suspended sentence of 3 to 4 months, conditioned upon 24 months of supervised probation and payment of certain monetary conditions. Defendant appeals.

---

[1] On appeal, defendant first contends that although N.C. Gen. Stat. § 14-269.2 does not explicitly contain an element of criminal intent or *mens rea*, willfullness or unlawfulness should be read into the statute because, as stated by the United States Supreme Court in *Morrissette v. U.S.*, strict liability offenses are disfavored in our criminal jurisprudence. We disagree.

N.C. Gen. Stat. § 14-269.2 (2001) in pertinent part states:

Weapons on campus or other educational property.

(b) It shall be a Class I felony for any person to possess or carry, whether openly or concealed, any gun, rifle, pistol, or other firearm of any kind on educational property or to a curricular or extracurricular activity sponsored by a school. However, this subsection does not apply to a BB gun, stun gun, air rifle, or air pistol.

---

1. For simplicity, we refer to defendant as a "bondsman" throughout this opinion.

The plain terms of this provision do not include any reference to criminal intent or *mens rea*. "It is true that an act may become criminal only by reason of the intent with which it is done, but the performance of an act which is expressly forbidden by statute may constitute an offense in itself without regard to the question of intent." *State v. Lattimore*, 201 N.C. 32, 34, 158 S.E. 741, 742 (1931). "The Legislature, unless it is limited by constitutional provisions imposed by the State and Federal Constitutions, has the inherent power to define and punish any act as a crime, because it is indisputedly a part of the police power of the State." *State v. Anderson*, 3 N.C. App. 124, 126, 164 S.E.2d 48, 50 (1968).

Defendant points to the U.S. Supreme Court's decision in *Morrissette v. U.S.*, 342 U.S. 246 (1952), as standing for the proposition that there can be no criminal liability without criminal intent. However, in *Morrissette*, the Court considered the absence of criminal intent in a statutory federal crime whose elements contained terms borrowed from the common law. The Court subsequently interpreted its holding in *Morrissette* to mean that,

> where Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed.

*United States v. Freed*, 401 U.S. 601, 607-08, 28 L. Ed. 2d 356, 361-62 (1971). Moreover, in *Morrissette*, the Court recognized that although "the presence of a vicious will or *mens rea* was a long requirement of criminal responsibility, . . . the list of exceptions grew, especially in the expanding regulatory area involving activities affecting public health, safety, and welfare." *Id.*; *see also Morrissette*, 342 U.S. at 252-59, 96 L. Ed. 2d. at 295-98. Thus, the U.S. Supreme Court has upheld the imposition of criminal penalties without the finding of criminal intent on the part of the violator. *See id.* (discussing *U.S. v. Dotterweich*, 320 U.S. 277, 284, 88 L. Ed. 48, 53).

The statute in this case, N.C. Gen. Stat. § 14-269.2, was enacted for the purpose of "deter[ring] students and others from bringing any type of gun onto school grounds" because of "the increased necessity for safety in our schools." *In re Cowley*, 120 N.C. App. 274, 276, 461 S.E. 2d 804, 806 (1995). Accordingly, *Morrissette* does not require the insertion of a criminal intent into N.C. Gen. Stat. § 14-269.2. *See also*

*State v. Yarboro*, 194 N.C. 498, 503, 140 S.E. 216, 218 (1927) (stating that "by virtue of the police power the law-making body may enact laws for the enjoyment of private and social life, the beneficial use of property, the security of the social order, and the prevention and punishment of injuries, as well as for the protection of the life, safety, health, morals, and comfort of the citizen").

Defendant also argues without a *mens rea* element, N.C. Gen. Stat. § 14-269.2 offends the Equal Protection Clause of the North Carolina and United States Constitution.

> The Equal Protection Clause of Article I, § 19 of the North Carolina Constitution and the Equal Protection Clause of § 1 of the Fourteenth Amendment to the United States Constitution forbid North Carolina from denying any person equal protection of the laws. . . . To determine if a regulation violates either of these clauses, North Carolina courts apply the same test. The court must first determine which of several tiers of scrutiny should be utilized. Then it must determine whether the regulation meets the relevant standard of review. Strict scrutiny applies when a regulation classifies persons on the basis of certain designated suspect characteristics or when it infringes on the ability of some persons to exercise a fundamental right. If a [statute] receives strict scrutiny, then the state must prove that the classification is necessary to advance a compelling government interest; otherwise, the statute is invalid. Other classifications, including gender and illegitimacy, trigger intermediate scrutiny, which requires the state to prove that the regulation is substantially related to an important government interest. If a [statute] draws any other classification, it receives only rational-basis scrutiny, and the party challenging the [statute] must show that it bears no rational relationship to any legitimate government interest. If the party cannot so prove, the regulation is valid.

*DOT v. Rowe*, 353 N.C. 671, 675, 549 S.E.2d 203, 207 (2001).

In this case, defendant contends N.C. Gen. Stat. § 14-269.2 "without *mens rea* would violate Equal Protection by making irrational distinctions between those guilty of a felony and those not." As an example, defendant argues a school custodian cleaning the building at night carrying a weapon for protection would be guilty of a Class I felony whereas a volunteer fireman wielding a shotgun during an elementary school fire prevention talk would be immune from prosecution. In other words, defendant argues N.C. Gen. Stat. § 14-269.2

creates a constitutionally impermissible distinction between those persons exempt from prosecution in subsection (g) and those persons lacking criminal intent but yet subject to prosecution. Such a distinction receives rational basis review, which requires the party challenging the statute to show that it bears no rational relationship to any legitimate government interest. *See id.* If the party cannot so prove, the regulation is valid. *See id.*

As stated, N.C. Gen. Stat. § 14-269.2 was enacted for the purpose of "deter[ring] students and others from bringing any type of gun onto school grounds" because of "the increased necessity for safety in our schools." *Cowley*, 120 N.C. App. at 276, 461 S.E. 2d at 806. Thus, any person who possesses or carries, whether openly or concealed, any gun, rifle, pistol, or other firearm of any kind on educational property or to a curricular or extracurricular activity sponsored by a school is guilty of a Class I felony. *See* N.C. Gen. Stat. § 14-269.2. However, G. S. § 14-269.2 does not apply to (1) a weapon used solely for education or school sanctioned ceremonial purposes, (2) a weapon used in a school-approved program conducted under the supervision of an adult whose supervision has been approved by the school authority, (3) firefighters, (4) emergency service personnel, (5) N.C. Forest Service personnel, (6) certain people, such as the military, law enforcement and the national guard, acting in their official capacity, (7) any private police employed by an educational institution when acting in the discharge of official duties, (8) home schools, or (9) a person who takes possession of a weapon from another person and immediately delivers the weapon, as soon as practicable, to law enforcement authorities. *See* N.C. Gen. Stat. §§ 14-269.2(g)-(h) and 14-269(b). Thus, for example, demonstrations for educational purposes, such as civil war re-enactments, emergency personnel responding to a school crisis or emergency situation and a teacher or principal taking a gun away from a student are exempt from prosecution under this statute. Accordingly, we conclude the exemptions to N.C. Gen. Stat. § 14-269.2 bear a rational relationship to a legitimate government interest. Indeed, the exemptions strike an appropriate balance between the safety of our children and the furtherance of education in this state.

In his next argument, defendant contends the trial court's failure to instruct on the element of willfulness constitutes reversible error because the defendant was indicted for willfully, feloniously, and unlawfully possessing a weapon on educational property. However, the use of the words willfully, feloniously, and unlawfully in an indict-

ment are not an indication of the level of *mens rea* to be proven beyond a reasonable doubt in order to convict defendant of the indicted offense. Rather, these words are used to characterize the offense as a felony offense and to put the defendant on notice that he must defend against a felony charge. *See State v. Callett,* 211 N.C. 563, 191 S.E. 27 (1937) (holding that the failure to use the word feloniously as characterizing the charge in those cases where the criminal offense is punishable with death or imprisonment renders the indictment fatally defective); *but see State v. Blakney,* 156 N.C. App. 671, 673, 577 S.E.2d 387, 389 (2003) (stating that "while its inclusion is still the better practice, the word feloniously is not required for a valid felony indictment if the indictment references the specific statute making the crime a felony").

Accordingly, even assuming defendant acted without criminal intent, the trial court's refusal to instruct on criminal intent or to allow defendant to read the law on strict liability to the jury did not constitute reversible error because we conclude N.C. Gen. Stat. § 14-269.2 does not include a *mens rea* element.

[2] Next, defendant contends the trial court erred in instructing the jury that necessity was not a defense to N.C. Gen. Stat. § 14-269.2. Instead, defendant argues the trial court should have given his requested special instruction on necessity and should have allowed defendant's motion to read the law on necessity to the jury. We disagree.

"In North Carolina, requests for special jury instructions are allowable pursuant to G.S. §§ 1-181 and 1A-1, Rule 51(b). It is well settled that the trial court must give the instructions requested, at least in substance, if they are proper and supported by the evidence. The proffered instruction must . . . contain a correct legal request and be pertinent to the evidence and the issues of the case. However the trial court may exercise discretion to refuse instructions based on erroneous statements of the law." *State v. Napier,* 149 N.C. App. 462, 463-64, 560 S.E.2d 867, 868-69 (2002).

"Under the necessity defense, a person is excused from criminal liability if he acts under a duress of circumstances to protect life or limb or health in a reasonable manner and with no other acceptable choice. The rationale behind the defense is based upon the public policy that the law ought to promote the achievement of higher values at the expense of lesser values, and that sometimes the greater good for society will be accomplished by violating the literal language of the

criminal law. If the harm which will result from compliance with the law is greater than that which will result from violation of it a person is justified in violating it." *State v. Thomas*, 103 N.C. App. 264, 265, 405 S.E.2d 214, 215 (1991).

In the case *sub judice*, defendant contends that upon learning someone saw a gun in the fugitive's possession, he became concerned about the safety of the elementary school children and pursued the fugitive onto the school grounds out of a need to protect the children. He further stated that he was not concerned about the money the bonding company would lose due to the fugitive's breach of his bail conditions. Whereas we agree the protection of elementary school children is a laudable goal, we conclude the necessity defense was not applicable in this case because the evidence, even in the light most favorable to defendant, showed that several alternatives were available to defendant. First, defendant could have left his gun safely off campus and then notified the school principal that an armed fugitive was on the premises and that the school needed to be secured. Indeed, after a teacher notified the principal an armed man was on campus, the school entered "lockdown". Second, defendant could have notified the police or could have asked the school principal to notify the police. Indeed, a sheriff's deputy arrived at the school within three minutes after notification. Third, defendant could have avoided the statutory violation by leaving his gun in a locked car or with one of his colleagues and then entering school grounds. Accordingly, we find the trial court correctly instructed the jury that the defense of necessity did not apply here as a matter of law and appropriately denied defendant's request for a special instruction on necessity and his request to read the law of necessity to the jury.

[3] In his final argument, defendant contends that because he was a bondsman attempting to arrest a fugitive, he was an officer of the state acting in the performance of his official duties and was therefore excused from felony liability pursuant to N.C. Gen. Stat. §§ 14-269.2(g)(1a) and 14-269(b)(2), (4) (2001) (exempting United States civil and law enforcement officers and state, county, city or town officers charged with the execution of the laws of the State when they are acting in the discharge of their duties from the prohibitions of 14-269.2). We disagree.

Bail bondsmen and runners are not officers of the State. A public office is a position created by the constitution or statutes and a public official exercises a portion of the sovereign power and makes dis-

cretionary decisions. *See Isenhour v. Hutto*, 350 N.C. 601, 610, 517 S.E.2d 121, 127 (1999). Bail bondsmen and runners do not hold a public office created by our state constitution or statutes; although the positions are defined by statute, they are regulated by statutory provisions that are enforced by the Commissioner of Insurance. *See* N.C. Gen. Stat. § 58-71-5 (2001) (providing the "Commissioner shall have full power and authority to administer the provisions of this Article, which regulates bail bondsmen and runners and to that end to adopt and promulgate rules and regulations to enforce the purposes and provisions of this Article"). Moreover, the statutory right of arrest to a surety under N.C. Gen. Stat. § 58-71-30, does "not create a law enforcement officer in the person of the bail bondsman". *State v. Mathis*, 349 N.C. 503, 513, 509 S.E.2d 155, 161 (1998). Indeed, the statutory right of arrest simply codifies a part of the common law powers of sureties, which in the case of a bail bondsman, are:

> based on the underlying source of the bondsman's authority to recapture the principal which derives from the contractual relationship between the surety and the principal. Essentially, the bond agreement provides that the surety post the bail, and in return, the principal agrees that the surety can retake him at any time, even before forfeiture of the bond. By entering into the contract, not only does the principal *voluntarily* consent to be committed to the custody of the surety, but under common law, he also implicitly agrees that the surety or the surety's agent may break and enter his home and use reasonable force in apprehending him. The contract establishes the surety's and bondsman's right of recapture as private in nature, with the understanding that the government will not interfere. Thus, this common law right of recapture established that seizure of the principal by the surety is technically not an "arrest" at all and may be accomplished without process of law.

*Id.* at 510, 509 S.E.2d at 159 (stating also that "the term arrest in the context [of a bail bondsman arresting a fugitive] is meant to convey an apprehension, seizure or recapture" and not the traditional meaning of "depriving another of his liberty"). Therefore, bail bondsmen and runners are not officers of the State exercising the power of the sovereign in a discretionary manner but rather are sureties regulated by statutory provisions that codify in part the common law governing the surety-principal relationship between bondsmen and the criminally accused. Accordingly, the trial court did not err when it concluded as a matter of law that defendant was not an officer of the

State, instructed the jury that none of the exemptions in N.C. G.S. § 14-269.2 were applicable to defendant, and instructed the jury that a bondsman had authority to seize a fugitive.

No error.

Judges McGEE and HUDSON concur.