STATE OF NORTH CAROLINA v. BRIAN KEITH WATTERSON, Defendant

No. COA08-1110

(Filed 4 August 2009)

**Firearms and Other Weapons— possession of weapon of mass death and destruction—instruction—mens rea**

 The trial court did not err in a double possession of a weapon of mass death and destruction case by failing to instruct the jury that it was required to determine whether defendant knew that his two shotguns had barrels less than 18 inches long because: (1) the General Assembly intended that possession of the weapon alone would constitute a violation of N.C.G.S. § 14-288.8; (2) nothing in the language of the statute specifically requires, as an element of the crime, knowledge of the precise physical characteristics of the shotgun; and (3) even applying the factors in *Staples*, 511 U.S. 600 (1994), as a method of determining legislative intent, they support the conclusion that the General Assembly did not intend for the State to prove that a defendant knew of the physical characteristics of the weapon that made it unlawful under N.C.G.S. § 14-288.8.

Appeal by defendant from judgments entered 12 February 2008 by Judge James M. Webb in Guilford County Superior Court. Heard in the Court of Appeals 24 March 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Richard H. Bradford, for the State.*

*Eric A. Bach for defendant-appellant.*

GEER, Judge.

Defendant Brian Keith Watterson appeals his convictions for two counts of possession of a weapon of mass death and destruction in

**STATE v. WATTERSON**

[198 N.C. App. 500 (2009)]

violation of N.C. Gen. Stat. § 14-288.8 (2007) based on his possession of two sawed-off shotguns that had barrel lengths of less than 18 inches. Defendant argues on appeal that the trial court erred in failing to instruct the jury on an essential element of the offense: that he knew the physical characteristics of the shotguns that made them unlawful. We conclude, however, that the General Assembly intended that possession of the weapon alone—as defined by present law regarding "possession"—would constitute a violation of N.C. Gen. Stat. § 14-288.8. The trial court, therefore, properly refused to instruct the jury that it was required to find that defendant knew that the barrels of the two shotguns in his possession were less than 18 inches.

Facts

The State's evidence at trial tended to show that on the evening of 16 August 2007, defendant called the Guilford County Sheriff's Department, reporting a possible break-in at his house. Deputy Vincent L. Gaddy and another deputy were dispatched to defendant's residence to investigate. When they arrived, the two deputies performed a security sweep of the interior of the house. While doing so, they noticed two shotguns in defendant's bedroom.

After finishing their sweep, the deputies asked defendant about the shotguns and inspected them. Defendant acknowledged that the guns belonged to him and explained that he had "cut the barrels off" because he believed he was being stalked, and he needed to be able to move around more easily in his home while holding the guns. Defendant also told the deputies that he did not know the length of the barrels of the two guns.

Deputy Gaddy looked up the legal limitations for the length of a shotgun's barrel, but was unable to visually determine whether the guns' barrels were too short. After getting a tape measure from a third deputy, the two deputies measured the length of the barrels of defendant's guns: one measured 13 9/16 inches long, while the second measured 14 3/4 inches long. Based on the length of the barrels, the deputies arrested defendant and charged him with two counts of possession of a weapon of mass death and destruction.

At trial, defendant moved to dismiss the charges at the close of the State's evidence, contending that the State had failed to "prove that [defendant] actually knew that the length of the shotguns was less than eighteen inches." After the trial court denied the motion to dismiss, defendant testified that he is a former service member of the

United States Navy, where he was given security training, including SWAT-team-style training. Defendant explained that he believed he was being stalked as a result of a lawsuit he had filed. He had sawed off the barrels of both guns to make it easier to maneuver around in the house while carrying either of the guns. Defendant stated that the barrel of one of the shotguns had previously been bent, so he decided to cut it off at the bend to make the gun safer. He sawed off the other shotgun by "eyeball[ing] what [he] thought would be a safe measurement for safe use of the weapon." Defendant further testified that he did not measure the barrels of either gun before or after cutting them down and that he never knew what the actual lengths of the barrels were. Defendant renewed his motion to dismiss at the close of his evidence, and the trial court again denied the motion.

During the charge conference, defendant requested that the trial court instruct the jury that as an essential element of the crime, the jury must find that defendant knew that the barrels of the shotguns were less than 18 inches long. Defendant submitted to the court a proposed written instruction that would have required the jury to find not only that defendant possessed a shotgun that had a barrel less than 18 inches long, but also that "the defendant knew that the shotgun had a barrel with a length less than eighteen (18) inches." When the trial court refused to give the proposed instruction, defense counsel objected that the jury was not being required to make any finding of criminal intent, knowledge, or willfulness.

Ultimately, the trial court instructed the jury that the State was required to prove only "[t]hat the defendant possessed a weapon of mass death and destruction." The court then explained that "[p]ossession of an article may be either actual or constructive," but that either form of possession requires that the person be "aware of [the article's] presence and [have] both the power and intent to control its disposition or use." The court then instructed the jury that "[a] weapon of mass death and destruction is any shotgun with a barrel of less than eighteen inches in length."

The jury found defendant guilty of both counts. The trial court sentenced defendant to a presumptive-range term of 15 to 18 months imprisonment for one count. With respect to the second count, the court imposed a presumptive-range term of 19 to 23 months, but suspended the sentence and placed defendant on supervised probation for 60 months beginning upon his release from incarceration on the first count. Defendant timely appealed to this Court.

## Discussion

The sole issue before this Court is whether the trial court erred in not instructing the jury that it was required to determine whether defendant knew that his shotguns had barrels less than 18 inches long. "A trial judge is required by N.C.G.S. § 15A-1231 and N.C.G.S. § 15A-1232 to instruct the jury on the law arising on the evidence. This includes instruction on the elements of the crime." *State v. Bogle*, 324 N.C. 190, 195, 376 S.E.2d 745, 748 (1989). This Court, therefore, reviews de novo the trial court's jury instructions regarding the elements of the offense at issue. *State v. Ramos*, 193 N.C. App. 629, 635, 668 S.E.2d 357, 362 (2008), *aff'd on other grounds*, 363 N.C. 352, 678 S.E.2d 224 (2009).

N.C. Gen. Stat. § 14-288.8(a) makes it "unlawful for any person to manufacture, assemble, possess, store, transport, sell, offer to sell, purchase, offer to purchase, deliver or give to another, or acquire any weapon of mass death and destruction." The statute defines the term "weapon of mass death and destruction" to include:

(1) Any explosive or incendiary:

   a. Bomb; or

   b. Grenade; or

   c. Rocket having a propellant. charge of more than four ounces; or

   d. Missile having an explosive or incendiary charge of more than one-quarter ounce; or

   e. Mine; or

   f. Device similar to any of the devices described above; or

(2) Any type of weapon (other than a shotgun or a shotgun shell of a type particularly suitable for sporting purposes) which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, and which has any barrel with a bore of more than one-half inch in diameter; or

(3) Any firearm capable of fully automatic fire, any shotgun with a barrel or barrels of less than 18 inches in length or an overall length of less than 26 inches, any rifle with a barrel or barrels of less than 16 inches in length or an overall length of

less than 26 inches, any muffler or silencer for any firearm, whether or not such firearm is included within this definition. For the purposes of this section, rifle is defined as a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder; or

(4) Any combination of parts either designed or intended for use in converting any device into any weapon described above and from which a weapon of mass death and destruction may readily be assembled.

The term "weapon of mass death and destruction" does not include any device which is neither designed nor redesigned for use as a weapon; any device, although originally designed for use as a weapon, which is redesigned for use as a signaling, pyrotechnic, line-throwing, safety, or similar device; surplus ordnance sold, loaned, or given by the Secretary of the Army pursuant to the provisions of section 4684(2), 4685, or 4686 of Title 10 of the United States Code; or any other device which the Secretary of the Treasury finds is not likely to be used as a weapon, is an antique, or is a rifle which the owner intends to use solely for sporting purposes, in accordance with Chapter 44 of Title 18 of the United States Code.

N.C. Gen. Stat. § 14-288.8(c).

Although defendant contends that a failure to require the State to prove that a defendant knew the length of the shotgun barrel would render N.C. Gen. Stat. § 14-288.8 a strict liability crime without any requirement of *mens rea*, that articulation of the issue is not precisely correct. Analogous to the controlled substances statutes, *see* N.C. Gen. Stat. § 90-95 (2007) (providing that it is unlawful for any person to manufacture; sell or deliver; possess with intent to manufacture, sell, or deliver; or possess a controlled substance), the General Assembly has prohibited a person from "manufactur[ing], assembl[ing], possess[ing], stor[ing], transport[ing], sell[ing], offer[ing] to sell, purchas[ing], offer[ing] to purchase, deliver[ing] or giv[ing] to another, or acquir[ing] any weapon of mass death and destruction." N.C. Gen. Stat. § 14-288.8(a). There is a degree of knowledge or intent implicit in these acts—our courts have fleshed out the law governing these acts in other contexts prohibiting the same acts with respect to other contraband. *See Black v. Littlejohn,* 312 N.C. 626, 639, 325 S.E.2d 469, 478 (1985) ("An additional principle of statutory construction recognizes that when a term has long-standing legal significance, it is presumed that legislators intended the same significance

to attach by use of that term, absent indications to the contrary . . . ." (internal quotation marks omitted)); *Williams v. Alexander County Bd. of Educ.*, 128 N.C. App. 599, 603, 495 S.E.2d 406, 408 (1998) ("In ascertaining the intent of the legislature, the presumption is that it acted with full knowledge of prior and existing laws.").

Indeed, in this case, the trial court specifically required the jury to find that defendant was "*aware* of [the sawed-off shotgun's] presence and [had] both the power and *intent* to control its disposition or use." (Emphasis added.) Thus, the more precise issue before this Court, given the facts of this case, is whether the statute requires a different level of knowledge or *mens rea* than that required by the law of possession.

· "Whether a criminal intent is a necessary element of a statutory offense is a matter of construction to be determined from the language of the statute in view of its manifest purpose and design." *State v. Hales*, 256 N.C. 27, 30, 122 S.E.2d 768, 771 (1961). As a cardinal principle of statutory interpretation, "[i]f the language of the statute is clear and is not ambiguous, we must conclude that the legislature intended the statute to be implemented according to the plain meaning of its terms." *Hyler v. GTE Prods. Co.*, 333 N.C. 258, 262, 425 S.E.2d 698, 701 (1993). Thus, in effectuating legislative intent, it is the duty of the courts to give effect to the words actually used in a statute and not to delete words used or to insert words not used. *N.C. Dep't of Corr. v. N.C. Med. Bd.*, 363 N.C. 189, 201, 675 S.E.2d 641, 649 (2009).

We first note that nothing in the language of the statute specifically requires, as an element of the crime, knowledge of the precise physical characteristics of the shotgun. N.C. Gen. Stat. § 14-288.8(c)(4), however, includes within the definition of a weapon of mass death and destruction "[a]ny combination of parts either *designed* or *intended* for use in converting any device into any weapon described above and from which a weapon of mass death and destruction may readily be assembled." (Emphasis added.) Similarly, the final paragraph in N.C. Gen. Stat. § 14-288.8(c) provides that "[t]he term 'weapon of mass death and destruction' *does not include* any device which is neither *designed* nor *redesigned* for use as a weapon[.]" (Emphasis added.) These two sentences thus include a *mens rea* component that is not included within the other, prior descriptions of weapons defined as weapons of mass death and destruction. Because the General Assembly specifically included additional intent provisions in these subsections of the statute, we

can presume that it did not intend for courts to impose additional intent requirements in the other subsections. *See N.C. Dep't of Revenue v. Hudson*, 196 N.C. App. 765, 768, 675 S.E.2d 709, 711 (2009) ("When a legislative body 'includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the legislative body] acts intentionally and purposely in the disparate inclusion or exclusion.' " (quoting *Rodriguez v. United States*, 480 U.S. 522, 525, 94 L. Ed. 2d 533, 537, 107 S. Ct. 1391, 1393 (1987))).

Moreover, in 2001, the General Assembly enacted N.C. Gen. Stat. § 14-288.21 (2007), which relates to nuclear, biological, or chemical weapons of mass destruction. In this legislation, the General Assembly (1) amended N.C. Gen. Stat. § 14-288.8(c) to repeal that portion of the statute that had previously identified nuclear material as a weapon of mass death and destruction and (2) created the new statute to separately govern nuclear, biological, and chemical weapons. *See* Act of Nov. 28, 2001, 2001 N.C. Sess. Laws 470, secs. 1, 3. This new statute parallels N.C. Gen. Stat. § 14-288.8 with a significant exception: the new statute contains an additional knowledge requirement. N.C. Gen. Stat. § 14-288.21 makes it "unlawful for any person to *knowingly* manufacture, assemble, possess, store, transport, sell, offer to sell, purchase, offer to purchase, deliver or give to another, or acquire a nuclear, biological, or chemical weapon of mass destruction." (Emphasis added.) Significantly, the General Assembly did not amend N.C. Gen. Stat. § 14-288.8 to add a similar requirement that the acts be undertaken "knowingly."

This legislative history, together with the differences in the otherwise identically worded statutes, strongly suggest that the General Assembly did not intend to require the State to prove that a defendant knowingly possessed a shotgun with a barrel of less than 18 inches. *See Carolinas-Virginias Ass'n of Bldg. Owners & Managers v. Ingram*, 39 N.C. App. 688, 699, 251 S.E.2d 910, 917 ("[Legislative] intent is to be found in the wording of the statute itself, viewed against the background of its history and with due regard given for the reason for its enactment and its relationship and interplay with other statutes."), *disc. review denied*, 297 N.C. 299, 254 S.E.2d 925 (1979).

In addition, this interpretation of N.C. Gen. Stat. § 14-288.8 is consistent with the design and purpose of the statute. *See State v. Fennell*, 95 N.C. App. 140, 143-44, 382 S.E.2d 231, 233 (1989) (holding § 14-288.8 is designed to "permit[] possession of shotguns, with the

exception of those which have been tampered with so as to shorten the barrel," and purpose of statute is "preservation of the public peace and safety"). The listed weapons of mass death and destruction are weapons that are deemed by the General Assembly to have no innocent purpose, and thus it is logical that § 14-288.8 contains no knowledge requirement. *See Staples v. United States*, 511 U.S. 600, 626, 128 L. Ed. 2d 608, 629, 114 S. Ct. 1793, 1808 (1994) (Stevens, J., dissenting) ("In 1934, when Congress originally enacted [the National Firearm Act], it limited the coverage of the 1934 Act to a relatively narrow category of weapons such as submachineguns and sawed-off shotguns—weapons characteristically used only by professional gangsters like Al Capone, Pretty Boy Floyd, and their henchmen. At the time, the Act would have had little application to guns used by hunters or guns kept at home as protection against unwelcome intruders.").

In arguing that N.C. Gen. Stat. § 14-288.8 requires the State to prove that he knew of the characteristics of the shotguns in his possession that made them unlawful, defendant relies heavily on the multi-factor test set out by the United States Supreme Court in *Staples* for evaluating whether a statute creates a strict liability offense. In concluding that the government was required to prove that the defendant knew that the weapon he possessed had the physical characteristics that brought it within the scope of the National Firearms Act, the *Staples* Court considered the following factors: (1) the background rules of the common law and its conventional *mens rea* requirement; (2) whether the crime can be characterized as a public welfare offense; (3) the extent to which a strict-liability reading of the statute would encompass innocent conduct; (4) the harshness of the penalty; (5) the seriousness of the harm to the public; (6) the ease or difficulty of the defendant ascertaining the true facts; (7) relieving the prosecution of time-consuming and difficult proof of fault; and (8) the number of prosecutions expected. *Staples*, 511 U.S. at 604-19, 128 L. Ed. 2d at 615-25, 114 S. Ct. at 1796-1804.

Defendant also relies upon *State v. Williams*, 158 Wash. 2d 904, 913-16, 148 P.3d 993, 998-99 (2006), in which the Supreme Court of Washington applied the *Staples* factors to a Washington statute similar to N.C. Gen. Stat. § 14-288.8, in that it prohibited the possession of shotguns with barrel lengths less than 18 inches. The *Williams* Court ultimately concluded, based on its application of the *Staples* factors, that "the legislature intended that the State prove that a person knew, or should have known, the characteristics that make a firearm illegal

to be convicted under" the Washington statute. 158 Wash. 2d at 915-16, 148 P.3d at 999.

Critically, in contrast to this case, in neither *Staples* nor *Williams* were the courts confronted with any indication from other legislation or legislative history of the legislature's intent. *See State v. Jordan*, 89 Ohio St. 3d 488, 491, 733 N.E.2d 601, 605 (2000) (in concluding that State was not required to prove defendant knew that barrel of shotgun was less than 18 inches long, declining to follow *Staples* because it "is a case involving federal statutory interpretation" and court was "interpreting a state statute"). In any event, our application of the *Staples* factors further supports our conclusion that the State was not required to prove beyond a reasonable doubt that defendant knew that the shotguns in his possession had barrel lengths less than 18 inches.

As to the first factor—the background rules of the common law and its typical *mens rea* requirement—our General Assembly has specifically stated that the Article containing § 14-288.8 is intended to "supersede and extend the coverage" of the common law. N.C. Gen. Stat. § 14-288.3 (2007). It is, therefore, unreasonable to limit N.C. Gen. Stat. § 14-288.8, a wholly statutorily-created offense, to common law principles. *See Rhyne v. K-Mart Corp.*, 358 N.C. 160, 169, 594 S.E.2d 1, 8 (2004) ("The legislative branch of government is without question 'the policy-making agency of our government, and when it elects to legislate in respect to the subject matter of any common law rule, the statute supplants the common law rule and becomes the public policy of the State in respect to that particular matter.' " (quoting *McMichael v. Proctor*, 243 N.C. 479, 483, 91 S.E.2d 231, 234 (1956))). *See also Morissette v. United States*, 342 U.S. 246, 262, 96 L. Ed. 288, 299, 72 S. Ct. 240, 249 (1952) ("Congressional silence as to mental elements in an Act merely adopting into federal statutory law a concept of crime already so well defined in common law and statutory interpretation by the states may warrant quite contrary inferences than the same silence in creating an offense new to general law, for whose definition the courts have no guidance except the Act.").

The second factor addresses whether the offense can be characterized as a public welfare offense. " 'The legislature may deem certain acts, although not ordinarily criminal in themselves, harmful to public safety, health, morals and the general welfare, and by virtue of its police power may absolutely prohibit them, either expressly or impliedly by omitting all references to such terms as "knowingly", "wilfully", "intentionally" and the like.' " *State v. Hill*, 31 N.C. App.

733, 735, 230 S.E.2d 579, 580 (1976) (quoting 1 Burdick, *Law of Crime* § 129j (1946)), *disc. review denied*, 292 N.C. 267, 233 S.E.2d 394 (1977). *Accord State v. Haskins*, 160 N.C. App. 349, 352-53, 585 S.E.2d 766, 768-69 (recognizing legislature may regulate conduct under State's police power to promote public welfare without requiring *mens rea* element in criminal statute), *appeal dismissed and disc. review denied*, 357 N.C. 580, 589 S.E.2d 356 (2003).

This Court has extended the concept of strict liability offenses beyond public welfare to public safety. In *Hill*, this Court held that N.C. Gen. Stat. § 20-138 (repealed 1983), which prohibited driving or operating a vehicle while "under the influence of intoxicating liquor," created a strict liability offense because the statute "sp[oke] absolutely" in that it contained no *mens rea* requirement and because it was included "in the same category as our speed limit statutes." 31 N.C. App. at 736, 230 S.E.2d at 580. Similarly, in *Haskins*, this Court concluded that N.C. Gen. Stat. § 14-269.2, which prohibits possession of guns on school campuses without specifying any culpable mental state, created a strict liability offense given that the offense was statutorily created, without a corresponding common law predecessor, and was enacted due to the " 'the increased necessity for safety in our schools.' " 160 N.C. App. at 352, 585 S.E.2d at 769 (quoting *In re Cowley*, 120 N.C. App. 274, 276, 461 S.E.2d 804, 806 (1995)). Here, N.C. Gen. Stat. § 14-288.8 appears in Subchapter X of Chapter 14, which includes "Offenses Against the Public Safety," and thus comes within the rationale of both *Hill* and *Haskins*.

As for the third factor—the risk of convicting people engaging in innocent behavior—the United States Supreme Court in *Staples* observed:

*Of course, we might surely classify certain categories of guns—no doubt including the machineguns, sawed-off shotguns, and artillery pieces that Congress has subjected to regulation—as items the ownership of which would have the same quasi-suspect character we attributed to owning hand grenades in* [*United States v. Freed*, 401 U.S. 601, 28 L. Ed. 2d 356, 91 S. Ct. 1112 (1971)]. But precisely because guns falling outside those categories traditionally have been widely accepted as lawful possessions, their destructive potential, while perhaps even greater than that of some items we would classify along with narcotics and hand grenades, cannot be said to put gun owners sufficiently on notice of the likelihood of regulation to justify interpreting [the

National Firearms Act] as not requiring proof of knowledge of a weapon's characteristics.

511 U.S. at 611-12, 128 L. Ed. 2d at 620, 114 S. Ct. at 1800 (emphasis added). Sawed-off shotguns and the other types of weapons identified in N.C. Gen. Stat. § 14-288.8(c) are not ones that people *typically* innocently possess. *See Staples*, 511 U.S. at 626-27, 128 L. Ed. 2d at 629-30, 114 S. Ct. at 1808 (Steven, J., dissenting) (noting that weapons such as machine guns and sawed-off shotguns were predominately used in crime, rather than for traditional gun uses, like hunting and home protection, and thus "the likelihood of innocent possession of such an unregistered weapon was remote").

The fourth factor requires consideration of the severity of the penalty imposed. N.C. Gen. Stat. § 14-288.8(d) provides that "[a]ny person who violates any provision of this section is guilty of a Class F felony." N.C. Gen. Stat. § 15A-1340.17(d) (2007), in turn, provides that the maximum possible sentence of a Class F felony is 59 months imprisonment. Although a nearly five-year sentence may be a fairly harsh punishment, the General Assembly has imposed comparable penalties for the commission of other truly strict liability offenses. *See State v. Abshire*, 363 N.C. 322, 328, 677 S.E.2d 444, 449 (2009) (observing that "[t]he crime of failing to notify the appropriate sheriff of a sex offender's change of address under N.C.G.S. § 14-208.11(a) is a strict liability offense" categorized as a Class F felony); *State v. Bryant*, 359 N.C. 554, 562-63, 614 S.E.2d 479, 484-85 (2005) (concluding failure to register as sex offender under N.C. Gen. Stat. § 14-208.11 is strict liability offense punishable as Class F felony). Given the other indications of legislative intent, the severity of the penalty is an issue for the General Assembly.

The fifth *Staples* factor requires consideration of the seriousness of the potential harm to the public. N.C. Gen. Stat. § 14-288.8 prohibits certain acts involving a *"weapon of mass death and destruction."* N.C. Gen. Stat. § 14-288.8(a). As the phrase connotes, one purpose of the statute is to prevent mass death or destruction through the use of certain weapons designed to inflict such damage. In addition to prevention, the statute's prohibition on more activities than mere possession—manufacturing, assembling, storing, transporting, selling, offering to sell, purchasing, offering to purchase, delivering, giving, and acquiring—evidences the General Assembly's aim to exclude completely the existence of weapons of mass death and destruction from the public sphere.

In short, the statute keeps weapons of mass death and destruction off of the streets and out of the hands of those people that might use them. *See Staples*, 511 U.S. at 627, 128 L. Ed. 2d at 630, 114 S. Ct. at 1808 (Stevens, J., dissenting) (stating that strict-liability reading of federal statute "reflected a legislative judgment that the likelihood of innocent possession of [unregistered machine guns and sawed-off shoguns] was remote, and far less significant than the interest in depriving gangsters of their use"); *State v. Kerner*, 181 N.C. 574, 578, 107 S.E. 222, 225 (1921) (holding General Assembly has authority under police power to prohibit pistols under a certain size to "prevent the use of pistols of small size, which are not borne as arms, but which are easily and ordinarily carried concealed"). *See also* Carl W. Thurman, III, *State v. Fennell: The North Carolina Tradition of Reasonable Regulation of the Right to Bear Arms*, 68 N.C. L. Rev. 1078, 1085 (1990) (discussing *Fennell's* holding that N.C. Gen. Stat. § 14-288.8 was a reasonable restriction on the state constitutional right to bear arms because "the prohibition on short-barrelled shotguns" was reasonably related to interest in preserving public peace and safety).

As for the sixth factor, addressing the difficulty involved in ascertaining the true facts about the weapon, defendant here could have avoided prosecution by performing the hardly onerous task of measuring the length of the barrels of the two shotguns to ensure that they were over 18 inches long. With respect to the shotgun with the bent barrel, defendant could have lawfully disposed of the firearm upon finding that he could not modify the barrel to make it "safe[r]" without also making it illegal.

While both *Staples,* 511 U.S. at 615-16, 128 L. Ed. 2d at 622-23, 114 S. Ct. at 1802, and *Williams*, 158 Wash. 2d at 915, 148 P.3d at 999, discuss the possibility that a semi-automatic firearm—which is not a prohibited weapon—might be imperceptibly altered or might wear down with time into a prohibited automatic weapon, that is not the fact situation presented by this record. Nor do we express any opinion as to whether such a weapon would be encompassed within N.C. Gen. Stat. § 14-288.8.

The seventh factor requires consideration of the burden imposed on the prosecution to prove culpable knowledge on the part of the defendant. The Supreme Court in *Staples*, 511 U.S. at 615-16 n.11, 128 L. Ed. 2d at 622-23 n.11, 114 S. Ct. at 1802 n.11, noted that "knowledge can be inferred from circumstantial evidence, including any external indications signaling the nature of the weapon." Based on this lan-

guage, the *Williams* Court held that requiring the State to prove that the defendant had knowledge of the fact that the shotgun's barrel was less than 18 inches would not be an excessive burden on the government. 158 Wash. 2d at 915, 148 P.3d at 999.

Neither Court explained how, exactly, the government should proceed to prove that a defendant knew that the barrel of the gun in his or her possession was, for example, 17.5 inches long rather than 18. Reading a knowledge requirement into N.C. Gen. Stat. § 14-288.8 of the type sought by defendant in this case would necessitate the "bizarre" assumption that the General Assembly "intended the owner of a sawed-off shotgun to be criminally liable if he knew its barrel was 17.5 inches long but not if he mistakenly believed the same gun had an 18-inch barrel." *Staples*, 511 U.S. at 634, 128 L. Ed. 2d at 634, 114 S. Ct. at 1812 (Stevens, J., dissenting). We do not believe that the Legislature intended to place such a substantial burden on the prosecution.

The final *Staples* factor is the number of prosecutions to be expected. Generally, the fewer expected prosecutions, the more likely intent is not required. *See Watson Seafood & Poultry Co. v. George W. Thomas, Inc.*, 289 N.C. 7, 14, 220 S.E.2d 536, 542 (1975) (refusing to construe motor vehicle statute as creating strict liability because "the requirement of proving intent or guilty knowledge would make it impossible to enforce such laws in view of the tremendous number of petty offenses"). The record on appeal is silent as to the number of prosecutions for alleged violations of N.C. Gen. Stat. § 14-288.8. Nevertheless, our search of appellate decisions has identified only 11 appellate opinions arising out of prosecutions for violation of N.C. Gen. Stat. § 14-288.8, even though the statute has been in existence since 1969.

In sum, even if we apply the *Staples* factors as a method of determining legislative intent, they support the conclusion that the General Assembly did not intend for the State to prove that a defendant knew of the physical characteristics of the weapon that made it unlawful under N.C. Gen. Stat. § 14-288.8. The trial court in this case, therefore, did not err in refusing to instruct the jury that it was required to find that defendant knew that the barrels of the shotguns in his possession were less than 18 inches long.

No Error.

Judges McGEE and BEASLEY concur.