An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1238
NORTH CAROLINA COURT OF APPEALS

Filed: 5 August 2014

STATE OF NORTH CAROLINA

v.                                    Henderson County
                                      No. 12 CRS 961
CHARLES STEVENS BLOW, JR.,
        Defendant.


Appeal by defendant from judgment entered 12 June 2013 by Judge Alan Z. Thornburg in Henderson County Superior Court. Heard in the Court of Appeals 5 March 2014.

*Attorney General Roy Cooper, by Assistant Attorney General M. Elizabeth Guzman, for the State.*

*Paul F. Herzog for defendant-appellant.*


GEER, Judge.


Defendant Charles Stevens Blow, Jr. appeals from his conviction of possession of a weapon by a prisoner. Defendant primarily argues that the trial court erred in denying his motion to dismiss because the State did not present evidence that defendant knew that possession of a fingerprick needle was unauthorized or that he knew the needle was capable of inflicting serious bodily injury. We hold that under the plain

language of the statute, the offense of possession of a weapon by a prisoner is a strict liability offense, and the State was not required to present evidence of defendant's knowledge. We, therefore, hold that the trial court properly denied the motion to dismiss.

## Facts

The State's evidence tended to show the following facts. Defendant was an inmate at the Henderson County Detention Center. On 1 April 2012, jail officers received an anonymous tip that defendant had a diabetic fingerprick needle in his cell. Deputy Douglas Collins of the Henderson County Sheriff's Office searched defendant for needles or other contraband, but did not find anything. He then asked defendant if he had a diabetic fingerprick needle, and defendant admitted that he had one on his desk in his cell.

Deputy Collins searched defendant's cell and seized the needle. When Deputy Collins informed defendant that the needle was considered a weapon, defendant replied, "Oh, I didn't know it was." Defendant was not diabetic and did not have any health-related reason to have a needle in his possession.

On 23 July 2012, defendant was indicted for possession of a weapon by a prisoner in violation of N.C. Gen. Stat. § 14-258.2.

At trial, Deputy Collins testified that inmates were not allowed to keep needles in their cells:

> Due to its extremely sharp nature and ability to weaponize the object, it can be used against staff and other inmates. Common DOC practice between inmates, that's the Department of Corrections, they will take the sharp end of the needle, they can rub it in their own feces or urine or any other bodily fluid and use that to stab another inmate or staff causing serious infection. Other communicable diseases, such as HIV or hepatitis are common throughout prisons. Those can be sent through the needle. Also it can be used as a dart.

Defendant testified on his own behalf at trial that he had found the needle on the floor in the common room, picked it up, and put it in his pocket. He used the needle to clean his fingernails, and had not altered the needle in any way or attempted to use it for any other purpose. He kept the needle on his desk and did not attempt to hide or conceal it. When asked about the needle, he told the officers exactly where it was, and they retrieved it. On cross-examination, defendant admitted that he was not diabetic.

The jury found defendant guilty on the charge of possession of a weapon by a prisoner. Defendant was sentenced to a presumptive-range term of six to 17 months imprisonment. His sentence was suspended, and defendant was placed on supervised

probation for 24 months. Defendant timely appealed to this Court.

I

Defendant first argues that the trial court erred in denying his motion to dismiss the charge of possession of a weapon by a prisoner. "This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). "'Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.'" *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (quoting *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980).

Defendant was charged with possession of a weapon by a prisoner in violation of N.C. Gen. Stat. § 14-258.2(a) (2013), which provides:

> Any person while in the custody of the Section of Prisons of the Division of Adult Correction, or any person under the custody of any local confinement facility as defined

in G.S. 153A-217, who shall have in his possession without permission or authorization a weapon capable of inflicting serious bodily injuries or death, or who shall fabricate or create such a weapon from any source, shall be guilty of a Class H felony; and any person who commits any assault with such weapon and thereby inflicts bodily injury or by the use of said weapon effects an escape or rescue from imprisonment shall be punished as a Class F felon.

Defendant argues that N.C. Gen. Stat. § 14-258.2(a) should not be read as a strict liability offense. Instead, defendant argues that the statute should be read as requiring the State to prove:

1. The person charged possessed a "weapon capable of inflicting serious bodily injuries or death," and;

2. The person charged possessed the implement knowing that he was doing so "without permission or authorization" from the incarcerating authority or its agents, and;

3. The person charged knew or should have known that the implement in question was "capable of inflicting serious bodily injuries or death . . ."

(Quoting N.C. Gen. Stat. § 14-258.2(a).) Defendant concedes that the State presented sufficient evidence of the first element, but argues that the State failed to present sufficient evidence of his proposed second and third elements.

"Whether a criminal intent is a necessary element of a statutory offense is a matter of construction to be determined from the language of the statute in view of its manifest purpose and design." *State v. Hales*, 256 N.C. 27, 30, 122 S.E.2d 768, 771 (1961). It is well settled that "when the language of a statute is clear and unambiguous there is no room for judicial construction and the court must give the statute its plain and definite meaning . . . ." *State v. Williams*, 291 N.C. 442, 446, 230 S.E.2d 515, 517 (1976). "Thus, in effectuating legislative intent, it is the duty of the courts to give effect to the words actually used in a statute and not to delete words used or to insert words not used." *State v. Watterson*, 198 N.C. App. 500, 505, 679 S.E.2d 897, 900 (2009).

In *Staples v. United States*, 511 U.S. 600, 128 L. Ed. 2d 608, 114 S. Ct. 1793 (1994), the United States Supreme Court set out a multi-factor test for deciding whether the legislature intended, when enacting a statute, to create a strict liability offense. In an opinion adopting *Staples*, this Court summarized the factors *Staples* required to be considered:

> (1) the background rules of the common law and its conventional *mens rea* requirement; (2) whether the crime can be characterized as a public welfare offense; (3) the extent to which a strict-liability reading of the statute would encompass innocent conduct; (4) the harshness of the penalty; (5) the seriousness of the harm to the public; (6)

the ease or difficulty of the defendant ascertaining the true facts; (7) relieving the prosecution of time-consuming and difficult proof of fault; and (8) the number of prosecutions expected.

*Watterson*, 198 N.C. App. at 507, 679 S.E.2d at 901.

In *Watterson*, the defendant was charged with possession of a weapon of mass death and destruction in violation of N.C. Gen. Stat. § 14-288.8(a) for possessing a shot gun that had a barrel less than 18 inches in length. This Court, after applying the *Staples* factors, concluded that "the General Assembly did not intend for the State to prove that a defendant knew of the physical characteristics of the weapon that made it unlawful under N.C. Gen. Stat. § 14-288.8." *Watterson*, 198 N.C. App. at 512, 679 S.E.2d at 904.

With respect to the *Staples* factors, we note that the General Assembly has made explicit its policy that "[l]ocal confinement facilities should provide secure custody of persons confined therein in order to protect the community and should be operated so as to protect the health and welfare of prisoners and provide for their humane treatment." N.C. Gen. Stat. § 153A-216(1) (2013). Thus, just as the offense of possession of a weapon of mass destruction is intended to protect the public safety by "exclud[ing] completely the existence of weapons of mass death and destruction from the public sphere," *Watterson*,

198 N.C. App. at 510, 679 S.E.2d at 903, possession of a weapon by a prisoner is intended to protect the safety of prisoners and DOC staff by completely ridding weapons from prisons. Interpreting N.C. Gen. Stat. § 14-258.2(a) as a strict liability offense is consistent with this policy.

Defendant does not, however, specifically address the *Staples* factors or *Watterson*. Consequently, he makes no argument that the offense of possession of a weapon by a prisoner is materially distinguishable from the offense of possession of a weapon of mass destruction addressed in *Watterson* such that application of the *Staples* factors would require that the State prove an element of knowledge or intent.

While defendant does not specifically address the relevance of the State's policy of reducing violence and protecting the health, welfare, and safety of prisoners and DOC staff to the question of the legislature's intent, he does argue, consistent with one of the *Staples* factors, that the statute could encompass innocent behavior and, in addition, that reading into the statute an element of intent is necessary in order to promote principles of fairness. Defendant points to the following questions submitted to the trial court by the jury during deliberations:

> Number one . . . : What orientation is given prisoners upon arrival at detention?

> What items . . . may a prisoner have in their possession?
>
> And then number two says: Please repeat judge's instructions as to what jury is to find. Is jury to consider intent?

Defendant argues that these questions show that the jury recognized an inherent unfairness in the plain language of the statute.

Defendant's argument regarding "fairness" would apply with respect to many strict liability statutes. And, the issue before the Court is not whether we believe the statute raises concerns about fairness, but rather whether the legislature intended to create a strict liability offense. It is not our role -- or the role of the jury -- to "superimpose[e] provisions or limitations not contained within the statute." *Williams*, 291 N.C. at 446, 230 S.E.2d at 517. When the plain meaning of the statute falls within constitutional limits, "[t]he question of the wisdom or propriety of statutory provisions is not a matter for the courts, but solely for the legislative branch of the state government." *Ferguson v. Riddle*, 233 N.C. 54, 57, 62 S.E.2d 525, 528 (1950). Because defendant has not specifically addressed the relevance of the State's public policy regarding safety in prisons and jails to determining the General Assembly's intent, he has not demonstrated that any other factors sufficiently override that factor so as to suggest that

the legislature did not intend to create a strict liability offense.

The State presented substantial evidence of the only two elements required under the plain language of the statute: that defendant was in the custody of a local confinement facility and that he possessed without authorization or permission a weapon capable of inflicting serious bodily injuries or death. We, therefore, hold that the trial court did not err in denying defendant's motion to dismiss the charge of possession of a weapon by a prisoner.

## II

Defendant next argues that the trial court erred in failing to adequately instruct the jury as to the nature of the weapon, and in failing to define the term "serious bodily injury." Because defendant did not object to the instruction at trial, he contends that the instructions constituted plain error.

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice -- that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affect[s] the fairness, integrity or public reputation of judicial proceedings[.]

*State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (internal citations and quotation marks omitted).

The trial court used N.C.P.I., Crim. 280.43, UNAUTHORIZED POSSESSION OR FABRICATION OF DANGEROUS WEAPON BY PRISONER and charged the jury, consistent with the pattern instruction, as follows:

> Now, the defendant has been charged with possession, without permission or authorization, of a weapon capable of inflicting *serious injuries* or death while he was in the custody of a local confinement facility.
>
> For you to find the defendant guilty of this offense the State must prove two things beyond a reasonable doubt.
>
> First, that the defendant had in his possession, without permission or authorization, a weapon capable of inflicting *serious bodily injury* or death. In determining whether the diabetic fingerprick instrument, also known as a lancet, is capable of inflicting *bodily injury* or death, you should consider the nature of the weapon and the manner in which it could be used.
>
> And second, at that time the defendant was under the custody of a local confinement facility. The Henderson County Detention Facility is a local confinement facility.
>
> So if you find from the evidence beyond a reasonable doubt that on or about the alleged date while he was in the custody of a local confinement facility, the defendant had in his possession, without permission or authorization, a weapon which was capable of

inflicting *serious bodily injury* or death, it would be your duty to return a verdict of guilty.

If you do not so find or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.

(Emphasis added.)

Defendant points out that this jury instruction referred to three different types of injuries that the weapon could be capable of inflicting: "serious injuries," "serious bodily injury," and "bodily injury." Each of these phrases is a term of art -- a "word or phrase having a specific, precise meaning in a given specialty, apart from its general meaning . . . ." *Black's Law Dictionary*, 1610 (9th ed. 2009). Defendant argues that the use of three similar but different terms of art in the instruction created confusion for the jury and, because the statute only prohibited possession of weapons capable of inflicting "serious bodily injury," the trial court should have defined that term for the jury.

Neither N.C. Gen. Stat. § 14-258.2 nor the pattern jury instruction defines "serious bodily injury." Our legislature has, however, defined "serious bodily injury" for purposes of assault inflicting serious bodily injury as

bodily injury that creates a substantial risk of death, or that causes serious permanent disfigurement, coma, a permanent

-13-

> or protracted condition that causes extreme
> pain, or permanent or protracted loss or
> impairment of the function of any bodily
> member or organ, or that results in
> prolonged hospitalization.

N.C. Gen. Stat. § 14-32.4(a) (2013).

At trial, defendant did not make any significant challenge to the State's contention that the fingerprick needle was capable of inflicting serious bodily injury. The State presented evidence regarding the harm that the needle could cause, including the "[c]ommon . . . practice between inmates" in prisons to weaponize the needle by rubbing it in feces and urine in order to cause serious infection or transmit serious communicable diseases. On cross-examination, defendant did not address that part of the officer's testimony, but rather elicited only that defendant had made no attempt to weaponize the needle and had not used the needle against any other person. In addition, the only evidence presented by defendant was his own testimony that he found the needle and used it to clean his fingernails and that he did not make any attempt to alter or change it.

Because defendant does not dispute that the State's evidence was sufficient to prove the element that the needle was capable of inflicting serious bodily injury and because defendant presented no contrary evidence, defendant has not

shown that the jury instructions had a probable impact on the verdict. Indeed, on appeal, defendant does not argue that there was a probable impact on the verdict, but rather contends generally that the inadequacies in the instructions amounted to fundamental error warranting a new trial.

However, in the seminal "plain error" case, our Supreme Court explained that "[t]he adoption of the 'plain error' rule does not mean that every failure to give a proper instruction mandates reversal regardless of the defendant's failure to object at trial." *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983). Instead, the Court held, "even when the 'plain error' rule is applied, '[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.' . . . In deciding whether a defect in the jury instruction constitutes 'plain error,' the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." *Id.* at 660-61, 300 S.E.2d at 378-79 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154, 52 L. Ed. 2d 203, 212, 97 S. Ct. 1730, 1736 (1977)). Because defendant has failed to show that any instructional errors had a probable effect on the jury, he has failed to establish plain error.

Although we hold that the jury instruction did not result in plain error in this case, we acknowledge that the pattern jury instruction's use of "serious injuries," "serious bodily injury," and "bodily injury," is troublesome given the distinct definitions given to those phrases in different contexts. Because, however, defendant failed to object at trial, we need not address whether the pattern instruction would constitute reversible error if the issue were properly preserved for review.

No error.

Judges ROBERT C. HUNTER and McCULLOUGH concur.

Report per Rule 30(e).